83 Cal.Rptr.2d 533 (1999)
973 P.2d 512
20 Cal.4th 225
The PEOPLE, Plaintiff and Respondent,
v.
Samuel MARTINEZ, Defendant and Appellant.
No. S064345.
Supreme Court of California.
April 8, 1999.
*535 Barbara Michel, Berkeley, under appointment by the Supreme Court, for Defendant and Appellant.
Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Stan Cross, W. Scott Thorpe, J. Robert Jibson and Jean M. Marinovich, Deputy Attorneys General, for Plaintiff and Respondent.
BROWN, J.
We granted review in this case to decide whether Penal Code[1] section 208, subdivision (b)(section 208(b)), which prescribes a higher sentence for kidnapping a person under the age of 14, is a separate crime or a punishment provision, and what the standard of asportation is for that statute. The Court of Appeal determined section 208(b) is a separate offense and applied a modified standard of asportation for aggravated kidnapping (see § 209, subd. (b)(1)).
Regardless whether section 208(b) is a punishment provision or a separate crime, we conclude it has the same asportation requirement as simple kidnapping, and articulate what factors are appropriate to making that determination. Because, as a result, we overrule People v. Caudillo (1978) 21 Cal.3d 562, 146 Cal.Rptr. 859, 580 P.2d 274 (Caudillo), we do not apply the holding retroactively to defendant. We further conclude the evidence was insufficient to support the verdict for simple kidnapping; however, it shows defendant is guilty of attempted kidnapping of a person under the age of 14. We therefore reverse the judgment of the Court of Appeal and modify the conviction accordingly.

*536 I. FACTS AND PROCEDURAL BACKGROUND
In 1993, defendant Samuel Martinez was convicted of lewd and lascivious conduct with a child under the age of 14 in violation of section 288. Although ordered not to live with minor children, in September 1994, he rented a room from a family in Reedley, California. The household included Victor, his wife, his 12-year-old son, Victor, Jr., his daughters, Ramona (15 years old at the time of the crime) and Janet (13 years old at the time of the crime), and his adult niece, Paula, and her 1-year-old daughter, Evelyn.
At some point prior to March 21, 1995, defendant made sexual overtures to Ramona. When Ramona's mother confronted him, he asked forgiveness and said he was drunk.
In the middle of the night of March 21, 1995, defendant returned home inebriated and instigated a violent confrontation with the family. Eventually, those present locked themselves in the bathroom for protection. Defendant repeatedly tried to break in, pounding on the door, knocking one doorknob off, and shattering a window.
During the melee, Victor, Victor, Jr., and Ramona managed to escape to seek help. Paula, who was holding Evelyn, and Janet were still in the bathroom when defendant forced the door open. He held a knife in one hand and a hammer in the other, and blood dripped from both hands. He demanded to know where Ramona was and repeatedly said someone was going to pay for what they had done to him. He put the knife to Paula's rib cage, and demanded that Janet take him to Ramona.
Still holding the knife, defendant placed his other hand on Janet's shoulder, and led her out of the residence. After going through the next room, the kitchen, and defendant's bedroom, and crossing a 15-foot porch, they proceeded across the backyard and parking area, which bordered on a 5-acre vacant lot. At this point, officers responding to the scene spotted defendant and Janet between 2 trees, approximately 40 to 50 feet from the back of the residence. After a brief pursuit, defendant was apprehended.
Defendant was charged with kidnapping (§ 207, subd. (a); section 207(a)), three counts of assault with a deadly weapon (§ 245, subd. (a)(1)), false imprisonment (§ 236), and making terrorist threats (§ 422), with personal use of a knife alleged as to the kidnapping, false imprisonment, and terrorist threat offenses. (§ 12022, subd. (b).) The kidnapping charge alleged the victim was under 14 years of age. (§ 208(b).)[2] Defendant was also charged with having suffered a prior serious felony conviction. (§§ 288, subd. (a), 667, subds. (a)(1), (b)-(i), 1192.7, subd. (c), 1170.12, subds. (a)-(e).)
The jury found defendant guilty on all counts except the charge of assault with a deadly weapon against Evelyn, for which a mistrial was declared. It also found true the weapon use enhancements and the allegation regarding Janet's age. In a bifurcated trial, the court determined defendant had suffered a prior felony conviction. Defendant was sentenced to 33 years and 4 months in state prison.
The Court of Appeal concluded section 208(b) is a separate offense. In considering *537 the appropriate asportation standard, it determined that "[i]f we apply the asportation test for simple kidnapping to these facts and treat [People v. Brown (1974) 11 Cal.3d 784, 114 Cal.Rptr. 426, 523 P.2d 226] and [People v. Caudillo (1978) 21 Cal.3d 562, 146 Cal. Rptr. 859, 580 P.2d 274, disapproved of on other grounds in People v. Escobar (1992) 3 Cal.4th 740, 749-751, 12 Cal.Rptr.2d 586, 837 P.2d 1100,] as legally binding precedent, then we would have to find that inadequate evidence was presented at trial to show that [defendant] was guilty of simple kidnap in violation of section 207, subdivision (a)." "[T]roubled" by this result, the court created a "modified version of the asportation standard for aggravated kidnap." Because the jury had not been instructed according to this formulation, it reversed and remanded for a new trial.
We granted the Attorney General's petition for review, limited to the issues set forth above.

II. DISCUSSION

A. Section 208(b) as a Separate Crime or a Punishment Provision
Section 208(b) provides for an increased sentencing range "[i]f the person kidnapped is under 14 years of age at the time of the commission of the crime...." Because section 208(b) proscribes "kidnapp[ing]" and not merely holding and detaining an individual, it must be construed to contain an asportation requirement. (People v. Rayford (1994) 9 Cal.4th 1, 11, 36 Cal.Rptr.2d 317, 884 P.2d 1369 (Rayford); cf. § 209, subd. (a); People v. Macinnes (1973) 30 Cal.App.3d 838, 844, 106 Cal.Rptr. 589.) Defendant asserts the statute is an enhancement for section 207(a).[3] If so, it necessarily incorporates the asportation standard applicable to simple kidnapping. (See Rayford, supra, 9 Cal.4th at p. 8, 36 Cal.Rptr.2d 317, 884 P.2d 1369.) The Attorney General contends section 208(b) is a separate crime. If that is the case, we must determine whether the asportation standard is derived from simple kidnapping (§ 207(a)) or aggravated kidnapping (§ 209, subd. (b)(1)).[4] (See Rayford, supra, 9 Cal.4th at p. 8, 36 Cal.Rptr.2d 317, 884 P.2d 1369.)
Aggravated kidnapping is for the purpose of robbery or certain sex offenses. (§ 209(b)(1); see People v. Stanworth (1974) 11 Cal.3d 588, 598, 114 Cal.Rptr. 250, 522 P.2d 1058; see generally, Rayford, supra, 9 Cal.4th at p. 20, 36 Cal.Rptr.2d 317, 884 P.2d *538 1369; People v. Daniels, supra, 71 Cal.2d at p. 1139, 80 Cal.Rptr. 897, 459 P.2d 225.) In contrast, culpability under section 208(b), as with simple kidnapping, arises independently of the commission or attempted commission of any other offense. (People v. Stanworth supra, 11 Cal.3d at pp. 600-601, 114 Cal. Rptr. 250, 522 P.2d 1058; see In re Barley (1975) 14 Cal.3d 122, 128-129 & fn. 9, 120 Cal.Rptr. 881, 534 P.2d 721.) Since the Legislature cast this form of kidnapping in terms of the victim's age rather than the perpetration of an underlying crime, we may infer an intent to incorporate the elements of section 207(a). Accordingly, regardless of whether section 208(b) is a separate crime or a punishment provision, the applicable standard for asportation is that required for simple kidnapping.

B. Asportation Standards[5]
With respect to asportation, aggravated kidnapping requires movement of the victim that is not merely incidental to the commission of the underlying crime and that increases the risk of harm to the victim over and above that necessarily present in the underlying crime itself. (§ 209(b)(2); see Rayford supra, 9 Cal.4th at pp. 12, 22, 36 Cal.Rptr.2d 317, 884 P.2d 1369; People v. Daniels, supra, 71 Cal.2d at p. 1139, 80 Cal.Rptr. 897, 459 P.2d 225.) "These two aspects are not mutually exclusive, but interrelated." (Rayford, supra, 9 Cal.4th at p. 12, 36 Cal.Rptr.2d 317, 884 P.2d 1369.)
In determining "whether the movement is merely incidental to the [underlying] crime ... the jury considers the `scope and nature' of the movement. [Citation.] This includes the actual distance a victim is moved. However, we have observed that there is no minimum number of feet a defendant must move a victim in order to satisfy the first prong." (Rayford supra, 9 Cal.4th at p. 12, 36 Cal.Rptr.2d 317, 884 P.2d 1369; People v. Daniels, supra, 71 Cal.2d at p. 1128, 80 Cal.Rptr. 897, 459 P.2d 225 ["to define the phrase `another part of the same county,' in terms of a specific number of inches or feet or miles would be open to a charge of arbitrariness"].)
"The second prong of the Daniels test refers to whether the movement subjects the victim to a substantial increase in risk of harm above and beyond that inherent in [the underlying crime]. [Citations.] This includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. [Citations.] The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased. [Citations.]" (Rayford, supra, 9 Cal.4th at pp. 13-14, 22, 36 Cal.Rptr.2d 317, 884 P.2d 1369 [Evaluation of risk of harm includes "such factors as `the defendant's motivation to escape detection,' and `the possible enhancement of danger to the victim resulting from the movement.'"]; In re Earley, supra, 14 Cal.3d at p. 132, 120 Cal.Rptr. 881, 534 P.2d 721.)
The asportation requirement for simple kidnapping has historically been less clear. In Stanworth, we distinguished the considerations delineated in People v. Daniels, supra, 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225, as relevant only to aggravated kidnapping, which involves an underlying offense. (People v. Stanworth, supra, 11 Cal.3d at pp. 598-599, 601, 114 Cal.Rptr. 250, 522 P.2d 1058.) "[W]here only simple kidnaping is involved, it is clear that the victim's movements cannot be evaluated in the light of a standard which makes reference to the commission of another crime." (Id. at p. 600, 114 Cal.Rptr. 250, 522 P.2d 1058.) Instead, we inferred from the statutory language that the critical consideration was distancea term we attempted to amplify by saying "the victim's movements must be more than slight [citation] or `trivial' [citation], they must be *539 substantial in character to constitute kidnaping under section 207." (Id. at p. 601, 114 Cal.Rptr. 250, 522 P.2d 1058.)
In Caudillo, supra, 21 Cal.3d at page 572, 146 Cal.Rptr. 859, 580 P.2d 274, the court affirmed that the movement must be "`substantial in character,'" but made the asportation standard exclusively dependent on the distance involved. The defendant had moved the rape victim for an "unspecified distance from the elevator to the storage room, and from the storage room to her apartment." (Ibid.) In assessing whether this evidence was sufficient to establish asportation for simple kidnapping, the court estimated the distance from the record and compared it to the movements in several other kidnapping cases. (Id. at pp. 573-574, 146 Cal.Rptr. 859, 580 P.2d 274.) Based entirely on this comparison of distances, the court found the evidence insufficient because "the factual situation most nearly resembles those encountered in [People v. Brown (1974) 11 Cal.3d 784, 114 Cal.Rptr. 426, 523 P.2d 226] (a movement of approximately 75 feet), [People v. Thornton (1974) 11 Cal.3d 738, 114 Cal. Rptr. 467, 523 P.2d 267] (a movement within the confines of a single room), and [Cotton v. Superior Court (1961) 56 Cal.2d 459, 15 Cal. Rptr. 65, 364 P.2d 241] (a movement within various rooms of a house and an additional 15 feet outside), than those found in Stanworth (a movement of a quarter of a mile), and [People v. Stender (1975) 47 Cal.App.3d 413, 121 Cal.Rptr. 334] (a movement of 200 feet)." (Id. at p. 574, 146 Cal.Rptr. 859, 580 P.2d 274; see also People v. Green (1980) 27 Cal.3d 1, 67, 164 Cal.Rptr. 1, 609 P.2d 468 [for the reasons stated in People v. Brown (1974) 11 Cal.3d 784, 114 Cal.Rptr. 426, 523 P.2d 226, 90-foot movement "insufficient as a matter of law" to establish asportation], disapproved on other grounds in People v. Hall (1986) 41 Cal.3d 826, 834, fn. 3, 226 Cal.Rptr. 112, 718 P.2d 99.)
Although purportedly no particular distance was controlling, distance nevertheless became the sole criterion for assessing asportation, with only "more than slight [citation] or `trivial' [citation]" as guidance in assessing when movement was "substantial in character." (People v. Stanworth, supra, 11 Cal.3d at p. 601, 114 Cal.Rptr. 250, 522 P.2d 1058.) The court expressly declined the People's invitation "to introduce considerationsother than actual distanceas determinative of what constitutes `sufficient movement' of the victim.... Neither the incidental nature of the movement, the defendant's motivation to escape detection, nor the possible enhancement of danger to the victim resulting from the movement is a factor to be considered in the determination of substantiality of movement for the offense of [simple] kidnaping. Such factors would be relevant in a Daniels situation of aggravated kidnapinga kidnaping for the purpose of robbery (Pen.Code, § 209)but we held in Stanworth that the Daniels test was not applicable to simple kidnaping under Penal Code section 207." (Caudillo, supra, 21 Cal.3d at p. 574, 146 Cal.Rptr. 859, 580 P.2d 274, fn. omitted; see also Cotton v. Superior Court (1961) 56 Cal.2d 459, 464-465, 15 Cal.Rptr. 65, 364 P.2d 241.)
As more than one Court of Appeal has observed, decisions of this court provide scant assistance in determining simple kidnapping asportation: "The increasing complexity of the law marches on. What [People v. Stanworth, supra, 11 Cal.3d 588, 114 Cal. Rptr. 250, 522 P.2d 1058] and [People v. Brown, supra, 11 Cal.3d 784, 114 Cal.Rptr. 426, 523 P.2d 226] seem to teach is this: the test of simple kidnaping is not (1) whether the movement is incidental to an underlying crime [citation]; (2) whether there is an increase in the risk of harm above that present in an underlying crime [citation]; (3) a mathematical formula [citation]; or (4) the crossing of arbitrary boundaries. [Citation.] Thus we are left to ponder what the movement is in simple kidnaping. We are told it `is the actual distance of the victim's movements' and they must be substantial in character [citations] but, of course, it is not a question of mathematical measurement or crossing of arbitrary boundaries. Thus, we are led in circles." (People v. Stender (1975) 47 Cal.App.3d 413, 422, 121 Cal.Rptr. 334.) "Jury confusion is understandable. Without a frame of reference, `substantial' has little or no meaning. To only say, as [the standard jury instruction] does, that it is `more than slight or trivial' scarcely helps." (People v. *540 Daniels (1993) 18 Cal.App.4th 1046, 1053, fn. 5, 22 Cal.Rptr.2d 877.)
In Rayford, we "recognize[d] that Caudillo's narrow approach might be subject to the criticism that it fails to appreciate that a primary reason forcible asportation is proscribed by the kidnapping statutes is the increase in the risk of harm to the victim that arises from the asportation. [Citations.]" (Rayford, supra, 9 Cal.4th at p. 22, 36 Cal.Rptr.2d 317, 884 P.2d 1369.) However, because we concluded in Rayford that the statute at issue incorporated the aggravated kidnapping asportation standard, we had no occasion to address the standard for simple kidnapping, the question now before us. (Ibid.)

C. Factors Appropriately Considered for Simple Kidnapping Asportation
The Court of Appeal found section 208(b) "more analogous" to simple kidnapping. It declined, however, to apply the simple kidnapping asportation standard because under Caudillo, it would have been limited solely to distance in assessing substantial evidence, a limitation the court found troubling "since it fails to factor the victim's tender age into the asportation equation." The court thus formulated a modified version of the aggravated kidnapping standard that took into consideration whether "the movement of the child ... substantially increases the risk of harm to, or vulnerability of, the child victim over that which existed immediately before the movement."
We agree that factors other than actual distance are relevant to determining asportation under section 208(b). For the reasons discussed below, however, we conclude such consideration should apply in all cases involving simple kidnapping. (§ 207(a).) Increased risk of harm and vulnerability may arise regardless of the victim's age. We therefore reaffirm that for simple kidnapping asportation the movement must be "substantial in character" (People v. Stanworth, supra, 11 Cal.3d at p. 601, 114 Cal.Rptr. 250, 522 P.2d 1058), but hold that the trier of fact may consider more than actual distance.
"[S]ection 207 does not speak in terms of a movement of any specific or exact distance." (Caudillo, supra, 21 Cal.3d at p. 572, 146 Cal.Rptr. 859, 580 P.2d 274.) Accordingly, nothing in the language of section 207(a) limits the asportation element solely to actual distance. Section 207(a) proscribes kidnapping or forcible movement, not forcible movement for a specified number of feet or yards. Our apparent limitation to actual distance in Caudillo adds language to the statute that is simply not there. Indeed, as we have historically recognized for both aggravated and simple kidnapping, limiting a trier of fact's consideration to a particular distance is rigid and arbitrary, and ultimately unworkable.
Rather, section 207(a) refers to "kidnapping" in the same respect section 209(b)(1) uses the word "kidnaps," which has been interpreted to require consideration of the "scope and nature" of the movement and the increased risk of harm to the victim. (People v. Daniels, supra, 71 Cal.2d at pp. 1131, fn. 5, 1139, 80 Cal.Rptr. 897, 459 P.2d 225.) The two prongs of aggravated kidnapping are not distinct, but interrelated, because a trier of fact cannot consider the significance of the victim's changed environment without also considering whether that change resulted in an increase in the risk of harm to the victim. Thus, for simple kidnapping asportation, movement that is "substantial in character" arguably should include some consideration of the "scope and nature" of the movement or changed environment, and any increased risk of harm.
Furthermore, our narrow approach in Caudillo fails to appreciate that a primary reason forcible asportation is proscribed by the kidnapping statutes is the increase in the risk of harm to the victim because of the diminished likelihood of discovery, the opportunity for the commission of additional crimes, and the possibility of injury from foreseeable attempts to escape. (See People v. Bradley (1993) 15 Cal.App.4th 1144, 1154, 19 Cal.Rptr.2d 276, disapproved on other grounds in Rayford supra, 9 Cal.4th at p. 21, 36 Cal.Rptr.2d 317, 884 P.2d 1369 [Victim's forcible movement 50 to 60 feet from the open street, and around building to the inside of a separate structure, an enclosed dumpster *541 area "provid[ed] the necessary environment to commit the targeted crime without interruption or detection."]; People v. Williams (1990) 220 Cal.App.3d 1165, 1171, 269 Cal.Rptr. 705 [danger sought to be prevented by simple kidnapping statute was realized when one victim, who was driving, abandoned moving vehicle to escape, causing truck to collide with another car and allowing second victim opportunity to flee]; People v. Stender, supra, 47 Cal.App.3d at p. 423, 121 Cal.Rptr. 334 ["200 feet becomes more a substantial distance when it is considered it accomplished the purpose of removing the victim from the ready help of her mother"]; cf. People v. Ford (1966) 65 Cal.2d 41, 58, 52 Cal.Rptr. 228, 416 P.2d 132, overruled on other grounds in People v. Satchell (1971) 6 Cal.3d 28, 35, 98 Cal.Rptr. 33, 489 P.2d 1361 [simple kidnapping "`inherently dangerous to human life'"].)
In cases involving simple kidnapping, the instructions currently provide that the victim must have been moved "for a substantial distance, that is, a distance more than slight or trivial." (See CALJIC No. 9.50.) In view of the foregoing discussion, we conclude it would also be proper for the court to instruct that, in determining whether the movement is "`substantial in character'" (Caudillo, supra, 21 Cal.3d at p. 572, 146 Cal.Rptr. 859, 580 P.2d 274), the jury should consider the totality of the circumstances. Thus, in a case where the evidence permitted, the jury might properly consider not only the actual distance the victim is moved, but also such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes.[6]
We nevertheless do not adopt the Court of Appeal's asportation standard, which would have required a finding that the movement substantially increased the victim's vulnerability or risk of harm. While the jury may consider a victim's increased risk of harm, it may convict of simple kidnapping without finding an increase in harm, or any other contextual factors. Instead, as before, the jury need only find that the victim was moved a distance that was "substantial in character." (See Caudillo, supra, 21 Cal.3d at p. 572, 146 Cal.Rptr. 859, 580 P.2d 274; People v. Stanworth, supra, 11 Cal.3d at p. 601, 114 Cal.Rptr. 250, 522 P.2d 1058.) To permit consideration of "the totality of the circumstances" is intended simply to direct attention to the evidence presented in the case, rather than to abstract concepts of distance. At the same time, we emphasize that contextual factors, whether singly or in combination, will not suffice to establish asportation if the movement is only a very short distance.
In addition, in a case involving an associated crime, the jury should be instructed to consider whether the distance a victim was moved was incidental to the commission of that crime in determining the movement's substantiality. Contrary to our language in Caudillo and Stanworth, such consideration is relevant to determining whether more than one crime has been committed, and is amply supported by the case law. (See In re Earley, supra, 14 Cal.3d at p. 129, 120 Cal. Rptr. 881, 534 P.2d 721, fn. 9 ["When an `associated crime' is involved, there can be no violation of section 207 unless the asportation is more than incidental to the commission of that crime."]; People v. Daniels, supra, 71 Cal.2d at pp. 1130-1131, 80 Cal.Rptr. 897, 459 P.2d 225 [movements incidental to rapes and robberies insufficient evidence of asportation]; Cotton v. Superior Court, supra, 56 Cal.2d at p. 465, 15 Cal.Rptr. 65, 364 P.2d 241 [where the movement is merely incidental to the alleged assault and rioting, section 207 does not apply]; People v. Magana (1991) 230 Cal.App.3d 1117, 1121, 281 Cal. Rptr. 338 [actual distance of at least one-half mile plus lengthy walk in park not merely incidental to rape].)
Because section 208(b) provides for three possible penaltiesfive, eight, or eleven years in prisondefendant contends factors *542 such as the victim's vulnerability, which are properly considered under the sentencing rules (Cal. Rules of Court, rule 421), cannot also be considered in determining whether the movement of the victim was "substantial in character." Of course, to use defendant's example, we are not concluding a trier of fact must find the victim was vulnerable, only that the jury may consider such a factor in determining whether the asportation was proved. If such is the case, California Rules of Court, rule 420(d), precludes its use in imposing the upper term.

D. Retroactivity
Our overruling of Caudillo raises the further question whether today's holding may be applied retroactively to defendant.
"It is settled that a state Supreme Court, no less than a state Legislature, is barred from making conduct criminal which was innocent when it occurred, through the process of judicial interpretation." (People v. Escobar (1992) 3 Cal.4th 740, 752, 12 Cal.Rptr.2d 586, 837 P.2d 1100.) "`[J]udicial enlargement of a criminal act by interpretation is at war with a fundamental concept of the common law that crimes must be defined with appropriate definiteness' [citation] and, when `applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids.' [Citation.] [¶] Thus, `[i]f a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction. [Citation.] The fundamental principle that "the required criminal law must have existed when the conduct in issue occurred," [citation], must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures. If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be given retroactive effect. [Citation.]' [Citations.]" (In re Baert (1988) 205 Cal.App.3d 514, 518, 252 Cal.Rptr. 418; see Bouie v. City of Columbia (1964) 378 U.S. 347, 353-354, 84 S.Ct. 1697, 12 L.Ed.2d 894; cf. People v. Guerra (1984) 37 Cal.3d 385, 400-402, 208 Cal.Rptr. 162, 690 P.2d 635 [retroactivity analysis not implicating ex post facto and due process focuses on reliance and policy considerations].)
Accordingly, retroactive application turns on whether the change effects "an unforeseeable judicial enlargement of a criminal statute" (Bouie v. City of Columbia, supra, 378 U.S. at p. 353, 84 S.Ct. 1697) and whether defendant had "fair warning that... contemplated conduct constitutes a crime." (Id. at p. 355, 84 S.Ct. 1697.)
As to the first question: The simple kidnapping standard remains "substantial distance"; however, in overruling Caudillo we have not only expanded the factual basis for making that determination but in the process effectively overruled cases holding that specific distances failed to establish asportation. Two of those decisions are particularly relevant as to these facts. In People v. Brown, supra, 11 Cal.3d 784, 114 Cal.Rptr. 426, 523 P.2d 226, the defendant confronted the victim in her kitchen and "forcibly took her through [the] house in search of her husband." (Id. at p. 788, 114 Cal.Rptr. 426, 523 P.2d 226.) They returned to the kitchen and then the living room, after which the defendant dragged her outside for an additional 75 feet. (Id. at pp. 788-789, 114 Cal.Rptr. 426, 523 P.2d 226.) Without considering any other factors, the court found the distance involved "insufficient to show that the movements were substantial." (Id. at p. 789, 114 Cal. Rptr. 426, 523 P.2d 226.) Again, in People v. Green, supra, 27 Cal.3d at page 67, 164 Cal. Rptr. 1, 609 P.2d 468, a 90-foot movement was "insufficient as a matter of law" "[f]or the reasons stated in Brown ...."
Applying the holdings in Brown and Green in light of Caudillo, the facts of this case do not satisfy the simple kidnapping asportation standard. From the record, it appears defendant moved the victim from the bathroom "across the room [where her father and brother slept]," "through the kitchen [and] that little room where [defendant] slept," across a 15-foot porch, and "approximate[ly] 40 to 50 feet" away from the house. Even if more than the 90 feet in Green, we can reasonably infer the movement within the *543 house was no greater than the movement within the house in Brown. Since the 65-foot movement outside is also less than the 75 feet in Brown, a reviewing court would be compelled to reverse for insufficiency of the evidence under prior law. Plainly, our decision constitutes "judicial enlargement of a criminal Act" (Pierce v. United States (1941) 314 U.S. 306, 311, 62 S.Ct. 237, 86 L.Ed. 226) for which defendant must have had fair warning to be held accountable.
In support of his position that defendant had fair warning, the Attorney General cites language in Rayford, supra, 9 Cal.4th at page 22, 36 Cal.Rptr.2d 317, 884 P.2d 1369, assertedly foreshadowing the demise of Caudillo, and Court of Appeal decisions that purportedly "looked to factors other than actual distance despite the apparent prohibition in Caudillo."[7] (See People v. Bradley, supra, 15 Cal.App.4th 1144, 1154, 19 Cal.Rptr.2d 276; People v. Williams, supra, 220 Cal.App.3d 1165, 1171, 269 Cal.Rptr. 705.) As for the Court of Appeal decisions, if they purposefully failed to follow the "actual distance" rule of Caudillo, they erred under the principles set forth in Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 20 Cal.Rptr. 321, 369 P.2d 937. (See In re Baert, supra, 205 Cal.App.3d at p. 520, fn. 2, 252 Cal.Rptr. 418.) Such fundamental judicial error cannot form the basis of constitutionally compelled notice. We note, however, that People v. Bradley, supra, 15 Cal.App.4th 1144, 19 Cal.Rptr.2d 276, involved kidnapping with intent to commit rape to which the aggravated, not simple, kidnapping standard applies. (Rayford, supra, 9 Cal.4th at p. 20, 36 Cal.Rptr.2d 317, 884 P.2d 1369.) In People v. Williams, supra, 220 Cal.App.3d 1165, 269 Cal.Rptr. 705, the defendant moved the victims more than 840 feet, a distance that would have sufficed under Caudillo. (Caudillo, supra, 21 Cal.3d at p. 574, 146 Cal. Rptr. 859, 580 P.2d 274, citing with approval People v. Stender, supra, 47 Cal.App.3d at p. 423, 121 Cal.Rptr. 334, in which movement of 200 feet was found sufficient.) Any discussion of other factors was dictum and without significance as fair warning.
With respect to language in Rayford, we observed "that Caudillo's narrow approach might be subject to the criticism that it fails to appreciate that a primary reason forcible asportation is proscribed by the kidnapping statutes is the increase in the risk of harm to the victim that arises from the asportation. [Citations.]" (Rayford, supra, 9 Cal.4th at p. 22, 36 Cal.Rptr.2d 317, 884 P.2d 1369, italics added.) Apart from its ambiguous tone, this statement is plainly dictum and dictum of very recent vintage at the time this incident occurred. Until today, Caudillo was the rule of law as announced by the state's highest court, on which all individuals were entitled to rely in determining their conduct. "The mere possibility that this court might reconsider its own precedent is not the equivalent of actually overruling it." (People v. King (1993) 5 Cal.4th 59, 80, 19 Cal.Rptr.2d 233, 851 P.2d 27.)
"Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." (McBoyle v. United States (1931) 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816.) At the time of defendant's *544 crime, the line for simple kidnapping asportation was laid down in our holdings in People v. Brown, supra, 11 Cal.3d at page 789, 114 Cal.Rptr. 426, 523 P.2d 226, and People v. Green, supra, 27 Cal.3d at page 67, 164 Cal.Rptr. 1, 609 P.2d 468. Defendant's conduct did not cross it, and he had no fair warning it would be redrawn. (See Bouie v. City of Columbia, supra, 378 U.S. at pp. 356-361, 84 S.Ct. 1697.) Accordingly, we find the evidence insufficient to support the judgment of conviction on sections 207(a) and 208(b).
Although we must reverse the kidnapping count, section 1181, subdivision 6, authorizes us to reduce the conviction to the lesser included offense of attempted kidnapping of a person under the age of 14 (§§ 664/207, 208) in light of the record. (See People v. Daly (1992) 8 Cal.App.4th 47, 57, 10 Cal.Rptr.2d 21.) When defendant grabbed Janet, he demanded she take him to Ramona, who had escaped to an apartment complex located on the other side of a parking area behind the house. He then took her outside and across the backyard toward the complex. When the police arrived, defendant and Janet were at the rear of the property moving in the direction of the parking area and an adjacent open field. This evidence shows that, but for the prompt response of the police, the movement would have exceeded the minimum asportation distance set by Brown and Green. (See People v. Daly, supra, 8 Cal.App.4th at p. 57, 10 Cal.Rptr.2d 21.)

DISPOSITION
The judgment of the Court of Appeal is reversed. The conviction of kidnapping in violation of sections 207 and 208 is modified to attempted kidnapping of a person under the age of 14 and the matter remanded for further proceedings consistent with this opinion.
GEORGE, C.J., KENNARD, J., BAXTER, J., WERDEGAR, J., and CHIN, J., concur.
Dissenting Opinion by MOSK, J.
I dissent.
The majority reach out unnecessarily in this matter to revise the asportation standard for simple kidnapping. Although they do not apply the new rule to this case, they determine that, in future cases, the trier of fact may consider factors other than the actual distance a victim was moved in determining whether such movement was "substantial." I strongly disagree that consideration whether, for example, movement resulted in a "changed environment" or "any increased risk of harm" (maj. opn., ante, 83 Cal.Rptr.2d at p. 540, 973 P.2d at p. 519) can substitute for the basic requirement under the Penal Code section 207 that a defendant forcibly carried the person "into another country, state, or county, or into another part of the same county." Our long-standing precedents (see, e.g., People v. Brown (1974) 11 Cal.3d 784, 114 Cal.Rptr. 426, 523 P.2d 226 and People v. Caudillo (1978) 21 Cal.3d 562, 146 Cal.Rptr. 859, 580 P.2d 274), holding that simple kidnapping involves movement of a substantial physical distance, should not be overruled in favor of the diluted, ambiguous standard adopted by the majority.
In my view, existing law in point is clear and correct. If a victim is forcibly moved only a slight distance, there has been no crime of simple kidnapping. Here, for example, defendant, who rented a room in the victim's house, forced her to move 40 to 50 feet across the small backyard of their residence. Movement of such a short distance on the same property fails, as a matter of law, to satisfy the statutory requirement under Penal Code section 207, subdivision (a), that the minimum movements necessary for commission of the crime are present when the person is forcibly taken "into another part of the same county." Any other circumstances of the forced movement, including whether the victim was placed in a position of increased danger, would not change that result. It is apparent, however, that the majority's new rule is a thinly veiled invitation to treat even movement of such a short distance as simple kidnapping depending on the "totality of the circumstances."

I
The relevant facts are briefly these. Defendant Samuel Martinez, after a violent confrontation *545 with the family from whom he rented a room, led 13-year-old Janet Benitez at knifepoint from their bathroom to their back door, and across what witnesses described as a well-lit, "small" backyard, approximately 40 to 50 feet in length. Police were already there. Martinez fled and was arrested by police officers.
A jury found Martinez guilty, inter alia, of assault with a deadly weapon and kidnapping a person under 14 years of age (Pen.Code, § 208, subd. (b)), and the superior court found his prior felony conviction true. He was sentenced to 33 years and 4 months in the state prison.
The Court of Appeal reversed the conviction for kidnapping and remanded for a new trial. As the majority state, the Court of Appeal candidly admitted that the evidence of asportation in this case would be insufficient under controlling precedent to constitute simple kidnapping. (See maj. opn., ante, 83 Cal.Rptr.2d at p. 537, 973 P.2d at p. 516.) As the Court of Appeal explained: "If we apply the asportation test for simple kidnapping to these facts ... then we would have to find that inadequate evidence was presented at trial to show that appellant was guilty of simple kidnap...." It concluded, however, that a modified version of the asportation standard should be applied when a simple kidnapping involved a person under 14 years of age, under Penal Code section 207, subdivision (b), to provide that "the movement of the child must be such that it substantially increases the risk of harm to, or vulnerability of, the child victim over that which existed immediately before the movement." It remanded for a new trial in which the jury could be so instructed. We granted review.

II
I agree with the majority that the standard for asportation applicable here is that required for simple kidnapping under Penal Code section 207, subdivision (a)  and not, as the Court of Appeal ruled, a standard based on a modification of the one for aggravated kidnapping. (See Pen.Code, § 209.) I part company with the majority, however, regarding the definition of asportation under Penal Code section 207, subdivision (a).
The question before us is one of statutory construction. We must look, therefore, to the language in question: "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." (Pen.Code, § 207, subd. (a), italics added.)
The phrase "carries the person into another country, state, or county, or into another part of the same county," on its face, appears to refer to movement of a substantial physical distance. Although it is literally true that movement of even a very short distance would be "into another part of the same county," the phrase was added to the original statute which referred only to movement into another country, state, or county  in response to a matter involving forcible movement of a substantial distance within the same county  from San Pedro to Catalina Island, both in the same county but many miles distant. (Ex parte Keil (1890) 85 Cal. 309, 312, 24 P. 742; see code comrs. notes, 47 West's Ann. Pen.Code (1988 ed.) foll. § 207, p. 518.)
Our previous decisions in point have consistently  and in my view correctly  held that Penal Code section 207 necessarily requires movement of a substantial, i.e., nontrivial, physical distance to a different location. Thus, in People v. Daniels (1969) 71 Cal.2d 1119, 1140, 80 Cal.Rptr. 897, 459 P.2d 225, applying that standard, we concluded that "[m]ovement across a room or from one room to another ... cannot reasonably be found to be asportation `into another part of the same county.'"[1]
*546 As the majority point out, we have never purported to establish a fixed distance limitation, in terms of a specific number of inches or feet or miles. We have also, however, expressly rejected the charge now leveled by the majority that such lack of precision has resulted in an asportation requirement that is unclear, circular or confusing. As we have explained, "a definition other than in such terms" is not "`uncertain' in any legally objectionable sense of the word. The law is replete with instances in which a person must, at his peril, govern his conduct by such nonmathematical standards as `reasonable,' `prudent,' `necessary and proper,' `substantial,' and the like. Indeed, a wide spectrum of human activities is regulated by such terms: thus one man may be given a speeding ticket if he overestimates the `reasonable or prudent' speed to drive his car in the circumstances [citation], while another may be incarcerated in state prison on a conviction of wilful homicide if he misjudges the `reasonable' amount of force he may use in repelling an assault.... [Standards of this kind are not impermissibly vague, provided their meaning can be objectively ascertained by reference to common experiences of mankind." (People v. Daniels, supra, 71 Cal.2d at pp. 1128-1129, 80 Cal.Rptr. 897, 459 P.2d 225; citations omitted.)[2]
In People v. Stanworth, supra, 11 Cal.3d 588, 601, 114 Cal.Rptr. 250, 522 P.2d 1058, we again construed the language of Penal Code section 207. "The statutory language implies that the determining factor in the crime of kidnaping is the actual distance of the victim's movements; and further, that the minimum movements necessary for the commission of the crime are present where the victim is forcibly taken `into another part of the same county.'... Finally, because the victim's movements must be more than slight [citation] or `trivial' [citation], they must be substantial in character to constitute kidnaping under section 207." (11 Cal.3d at p. 601, 114 Cal.Rptr. 250, 522 P.2d 1058, italics added in Stanworth.) In Stanworth, the victims were forced to walk a distance of one-quarter of a mile. We concluded that "[s]uch a distance cannot be reasonably regarded as slight or insubstantial"; it thus constituted "movement `into another part of the same county.'" (Id. at p. 603, 114 Cal.Rptr. 250, 522 P.2d 1058.)
In People v. Brown, supra, 11 Cal.3d 784, 788, 114 Cal.Rptr. 426, 523 P.2d 226, decided shortly thereafter, we again explained that, under the requirements of Penal Code section 207, "[w]here the movements of the victim are slight or insubstantial ... they cannot constitute kidnaping." In Brown, the defendant forcibly took the victim through her house, then dragged and pulled her out the back door to the side of the house "for a distance estimated to be not greater than 75 feet." (11 Cal.3d at pp. 788-789, 114 Cal. Rptr. 426, 523 P.2d 226.) We concluded that the evidence was insufficient to show that the movements were substantial: "The asportation of the victim within her house and for a brief distance outside the house must be regarded as trivial." (Id. at p. 789, 114 Cal. Rptr. 426, 523 P.2d 226.) We noted that we attached little significance to the fact that the victim was forcibly taken outside her residence, because "the `determining factor in the crime of kidnaping [under section 207] is *547 the actual distance of the victim's movements.'" (Id. at p. 789, fn. 6, 114 Cal.Rptr. 426, 523 P.2d 226, bracketed material in original.)
Again, in People v. Thornton (1974) 11 Cal.3d 738, 114 Cal.Rptr. 467, 523 P.2d 267, we affirmed that Penal Code section 207 requires movement of a substantial distance. In Thornton, the defendant confronted his victim in a single-room laundromat and, in the course of a sexual assault, dragged her to the rear of the facility. We held the asportation to be slight: "Because the sexual assault there took place wholly within the confines of a single room in a laundromat, any asportation involved was not ` "into another part of the same county"' within the meaning of section 207." (11 Cal.3d at p. 767, 114 Cal. Rptr. 467, 523 P.2d 267.)
In People v. Caudillo, supra, 21 Cal.3d 562, 572, 146 Cal.Rptr. 859, 580 P.2d 274, the victim was forcibly taken "for some unspecified distance" from the door of the elevator of her apartment complex to a storage room beside the elevator, and from there to her apartment, which was located down the hall from the storage room. We concluded that there was not "substantial movement within the meaning of Penal Code section 207." (Ibid.) We observed that it was "settled law" that the statutory language requires movement "which is more than that which would be regarded as trivial, slight, or insignificant." (Ibid) We expressly rejected the People's argument that we should introduce considerations, such as increased danger to the victim, other than actual distance as determinative of what constitutes substantial movement under the statute. (Id. at p. 574, 146 Cal.Rptr. 859, 580 P.2d 274.)
In People v. Green (1980) 27 Cal.3d 1, 65, 164 Cal.Rptr. 1, 609 P.2d 468, which involved movement of a victim a distance of 90 feet, we addressed the question whether "so brief a movement will support a kidnaping conviction under our cases." We again based our holding on a determination of the actual distance involved. We observed that most of our decisions holding forcible movements "substantial" within the meaning of the law of kidnapping involved distances far in excess of 90 feet, and that we had ruled in numerous cases that the distance that the victim was transported was insufficient as a matter of law to constitute movement "into another part of the same county" within the meaning of Penal Code section 207. (27 Cal.3d at p. 66,164 Cal.Rptr. 1, 609 P.2d 468.)
In People v. Sheldon (1989) 48 Cal.3d 935, 952-953, 258 Cal.Rptr. 242, 771 P.2d 1330, the trial court had included simple kidnapping as "other crimes" evidence that the jury might consider as an aggravating circumstance at the penalty phase of a murder trial. The evidence concerning the offense at issue was that the defendant forcibly pulled his victim into her house from an adjoining garage and dragged her through several rooms. We concluded that the trial court erred in including the offense in the other-crimes instruction: the asportation was "too minor to constitute kidnapping." (Id. at p. 953, 258 Cal.Rptr. 242, 771 P.2d 1330.) Although the precise distance involved, i.e., the dimensions of the rooms traversed, was not indicated in the record, our conclusion was based on a determination that it was insubstantial as a matter of law; we did not consider any circumstance of the asportation other than distance.
The majority hold that our previous decisions incorrectly restricted consideration of factors other than actual distance. They conclude that asportation under Penal Code section 207 can henceforth be established either by actual distance alone or by consideration of "contextual factors" (maj. opn., ante, 83 Cal.Rptr.2d at p. 541, 973 P.2d at p. 520)  i.e., that conviction is allowed if the movement either was for an objectively "substantial distance" or it materially increased the risk of harm to the victim. They are wrong. Increased harm may not, consistently with the requirement under Penal Code section 207 that the victim be moved at least "into another part of the same county," operate as a substitute for actual movement of a substantial physical distance. As all of our previous decisions in point have recognized, Penal Code section 207 refers only to physical movement. I fail to see how the measure of such movement is clarified by *548 inquiry into "contextual factors" such as the degree to which danger to the victim was increased.[3]
Nor, contrary to the conclusion of the majority, did People v. Daniels, supra, 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225, which added additional requirements for kidnapping under Penal Code section 209 to the requirement of substantial movement  i.e., that such movement be more than incidental to commission of the underlying crime and that it substantially increase the risk of harm necessarily present in the underlying crime itself  state or suggest that an increased risk of harm might turn a forced movement of a trivial distance into a kidnapping.
To the extent that some Court of Appeal decisions, as cited by the majority, may have so held, they should be disapproved. Instead, the majority endorse rulings, in my view clearly incorrect, wherein factors other than actual distance were used to determine whether forcible movement was substantial  including a decision finding that forcible movement of only 50 to 60 feet constituted simple kidnapping  not because it met the requirement of physical movement of a nontrivial distance, but because it "provid[ed] the necessary environment to commit the targeted crime without interruption or detection." (People v. Bradley (1993) 15 Cal. App.4th 1144, 1154,19 Cal.Rptr.2d 276.)

III
The majority's holding herein is inconsistent with any reasonable construction of the express requirement under Penal Code section 207, subdivision (a), that a victim was moved at least "to another part of the same county"  as confirmed by our numerous decisions in point over the past three decades since the decision I authored in People v. Daniels. Accordingly, I dissent.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] At the time of defendant's crimes, section 208 provided:

"(a) Kidnapping is punishable by imprisonment in the state prison for three, five, or eight years.
"(b) If the person kidnapped is under 14 years of age at the time of the commission of the crime, the kidnapping is punishable by imprisonment in the state prison for 5, 8, or 11 years. This subdivision is not applicable to the taking, detaining, or concealing, of a minor child by a biological parent, a natural father, as specified in Section 7611 of the Family Code, an adoptive parent, or a person who has been granted access to the minor child by a court order.
"(c) In all cases in which probation is granted, the court shall, except in unusual cases where the interests of justice would best be served by a lesser penalty, require as a condition of the probation that the person be confined in the county jail for 12 months. If the court grants probation without requiring the defendant to be confined in the county jail for 12 months, it shall specify its reason or reasons for imposing a lesser penalty.
"(d) If the person is kidnapped with the intent to commit rape, oral copulation, sodomy, or rape by instrument, the kidnapping is punishable by imprisonment in the state prison for 5, 8, or 11 years." (Stats.1992, ch. 163, § 101, p. 781.)
In 1997, the Legislature deleted subdivision (d) and incorporated it in section 209, subdivision (b)(1). (Stats.1997, ch. 817, §§ 1, 2.) This change has no bearing on the substantive issue before us. Therefore, for ease of reference, we will refer to the statutory provisions by their current designations.
[3] Section 207(a) provides: "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." "The language `into another part of the same county' was added in 1905 in response to Ex parte Keil (1890) 85 Cal. 309, 24 P. 742, in which this court held that the forcible removal of a person 20 miles from San Pedro to Santa Catalina Island, both in Los Angeles County, was not kidnapping within the meaning of the statute as it existed at that time." (Rayford, supra, 9 Cal.4th at p. 8, fn. 3, 36 Cal.Rptr.2d 317, 884 P.2d 1369; Ex parte Keil (1890) 85 Cal. 309, 310-311, 24 P. 742; see code comrs. note, 47 West's Ann. Pen.Code (1988 ed.) foll. § 207, p. 518.)
[4] At the time of defendant's crimes, section 209, subdivision (b) (section 209(b)) provided:

"(b) Any person who kidnaps or carries away any individual to commit robbery shall be punished by imprisonment in the state prison for life with possibility of parole."
In 1997, the Legislature revised the statute to provide:
"(b)(1) Any person who kidnaps or carries away any individual to commit robbery, rape, spousal rape, oral copulation, sodomy, or rape by instrument in violation of Section 289, shall be punished by imprisonment in the state prison for life with possibility of parole.
"(2) This subdivision shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." (Stats. 1997, ch. 817, § 2; see ante, fn. 2.)
Section 209(b)(2) thus codifies both Rayford, supra, 9 Cal.4th 1, 36 Cal.Rptr.2d 317, 884 P.2d 1369, and a modified version of the People v. Daniels (1969) 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225 asportation standard. (Stats. 1997, ch. 817, § 17; Sen. Rules Com., Analysis of Assem. Bill No. 59 (1997-1998 Reg. Sess.) as amended Sept. 4, 1997, p. 3.) Unlike our decisional authority, it does not require that the movement "substantially" increase the risk of harm to the victim. (Cf. People v. Daniels, supra, 71 Cal.2d at p. 1139, 80 Cal.Rptr. 897, 459 P.2d 225.)
[5] Our opinion in Rayford, supra, 9 Cal.4th at pages 14-20, 36 Cal.Rptr.2d 317, 884 P.2d 1369, recounts at length the "relevant and decidedly nonlinear history of the simple kidnapping, kidnapping for robbery, and kidnapping for ransom, reward, or extortion statutes." (Id. at p. 14, 36 Cal.Rptr.2d 317, 884 P.2d 1369.)
[6] To the extent Caudillo, supra, 21 Cal.3d 562, 146 Cal.Rptr. 859, 580 P.2d 274, prohibited consideration of factors other than actual distance in determining whether the asportation was sufficient to constitute simple kidnapping, it is overruled.
[7] Based on a reference in Rayford, supra, 9 Cal.4th at page 19, footnote 10, 36 Cal.Rptr.2d 317, 884 P.2d 1369, the Attorney General also argues that this court considered other factors in People v. Sheldon (1989) 48 Cal.3d 935, 952-953, 258 Cal.Rptr. 242, 771 P.2d 1330. On closer examination, it does not appear that we "implicitly examined the character of the movement as well as the actual distance in determining whether there was sufficient evidence of asportation for simple kidnapping." (Rayford, supra, 9 Cal.4th at p. 19, fn. 10, 36 Cal.Rptr.2d 317, 884 P.2d 1369.) In Sheldon, the defendant alleged the trial court erred in admitting a Nevada prior conviction for simple kidnapping at his penalty trial. He argued the evidence was insufficient as a matter of law because "the asportation took place almost entirely within [the victim's] home." (48 Cal.3d at p. 952, 258 Cal.Rptr. 242, 771 P.2d 1330, citing, inter alia, People v. Brown, supra, 11 Cal.3d at pp. 788-789, 114 Cal.Rptr. 426, 523 P.2d 226.) On this record, we agreed "that the asportation at issue was too minor to constitute kidnapping" but found the error harmless. (48 Cal.3d at p. 953, 258 Cal.Rptr. 242, 771 P.2d 1330.) The opinion contains no reference to any factor other than actual distance as the basis for this determination. (Id. at pp. 952-953, 258 Cal.Rptr. 242, 771 P.2d 1330.)
[1] Significantly, the Legislature explicitly incorporated the requirement that movement of a substantial distance is required for kidnapping in Penal Code section 209.5, involving kidnapping during commission of carjacking: "This section shall only apply if the movement of the victim is beyond that merely incidental to the commission of the carjacking, the victim is moved a substantial distance from the vicinity of the carjacking, and the movement of the victim increases the risk of harm to the victim over and above that necessarily present in the crime of carjacking itself." (Italics added.) The Legislature's adoption of a substantial distance requirement strongly suggests its agreement with our repeated construction of the requirement for simple kidnapping as involving movement of more than a very short distance. (See People v. Stanworth (1974) 11 Cal.3d 588, 600, 114 Cal. Rptr. 250, 522 P.2d 1058: "[T]he Legislature did not intend to apply criminal sanctions [for simple kidnapping] where the `slightest movement' is involved.")
[2] We pointed out in Daniels that the Model Penal Code, as adopted by the American Law Institute in 1962, provided that "`A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or a substantial distance from the vicinity where he is found.'" (71 Cal.2d at p. 1137, 80 Cal.Rptr. 897, 459 P.2d 225, italics added in Daniels.) The draftsmen expressly sought to preclude kidnapping convictions "`based on trivial changes of location.'" (Id. at p. 1138, 80 Cal.Rptr. 897, 459 P.2d 225.) They noted, furthermore, with regard to the phrase "into another part of the same county" in California's Penal Code section 207, that "`a court would be justified in reading into this phrase some requirement of substantial displacement.'" (71 Cal.2d at p. 1138, fn. 11, 80 Cal.Rptr. 897, 459 P.2d 225.)
[3] The majority purport to retain the requirement of forcible movement over more than "only a very short distance." (Maj. opn., ante, 83 Cal. Rptr.2d at p. 541, 973 P.2d at p. 520.) In rejecting what they call "abstract concepts of distance" (ibid.), however, they cast more shadow than light. The flaw in their analysis is made patent by its application to the facts herein. Movement of 40 to 50 feet is, by any concrete measure, slight  only a very short distance. Yet the majority indicate that the forced movement in this case might be sufficient under their new rule to constitute simple kidnapping based on "contextual factors," e.g., if the danger to the victim was increased. Do they suggest that movement over the identical distance might be more than "only very short" in one instance but not in another? I am dubious about a rule under which a victim was "carried ... into another part of the same county"  or not  depending only on "contextual factors."