Filed 7/10/15  P. v. Ventura CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060044 |
| v. | (Super.Ct.No. RIF1300043, RIF1304119) |
| PEDRO SALVADOR VENTURA, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Bernard Schwartz, Judge.  Affirmed.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Arlene A. Sevidal and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant, Pedro Salvador Ventura, is serving a prison sentence of 85 years to life after a jury convicted him of sex crimes against two children who were defendant's extended family members. This appeal concerns whether the evidence supports the jury's true findings on the two kidnapping allegations under Penal Code section 667.61.[1] Before committing a lewd act by force on one of the children, defendant picked up the child from a sofa bed in the living room of a home and carried her down the hall to the room where defendant was sleeping. We conclude that the evidence fully supports the true findings on these two kidnapping allegations because the movement of the child was substantial under the circumstances and increased the risk of harm to her.

## I. FACTS AND PROCEDURE

Defendant sexually abused R.C., a member of his extended family, beginning when she was about four years old until she was about seven years old. Defendant similarly abused R.C.'s older sister, A.C., when A.C. was about seven years old. At trial, two other extended family members testified that defendant had abused them when they were children.[2]

On October 7, 2013, the People filed a second amended information alleging that between about January 1 and December 31, 2002, defendant committed the following offenses against R.C.: in count 1, aggravated sexual assault of a child via sexual

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] It appears that defendant was R.C.'s and A.C.'s great-uncle by marriage. Defendant was married to the girls' mother's aunt. The children called defendant "Tio P." or "Tio Pete."

2

penetration (§ 289, subd. (a)) in felony violation of section 269, subdivision (a)(5); and in count 2, a lewd act on a child (§ 288, subd. (a)).

The People also alleged that, between about August 22, 1999 and August 22, 2001, defendant committed the following offenses against A.C.: in count 3, aggravated sexual assault of a child by means of forcible oral copulation (§ 288a) in felony violation of section 269, subdivision (a)(4); in count 4, a lewd act on a child by force (§ 288, subd. (b)(1)) and kidnapping thereby increasing the risk of harm to A.C. (§ 667.61, subds. (d)(2), (e)(1)); and, in count 5, a lewd act upon a child by force (§ 288, subd. (b)(1)).

The People alleged as to all counts that defendant had been convicted in the present case of committing a lewd act upon a child under the age of 14 against more than one victim. (§ 667.61, subd. (e)(4).)

On October 8, 2013, the jury found defendant guilty of all five counts, found true the kidnapping allegations as to count 4, and found true the multiple victim allegations as to all five counts.

On November 8, 2013, the trial court sentenced defendant to 85 years to life as follows: 25 years to life on count 4 under section 667.61, subdivision (d)(2), aggravated kidnapping, plus consecutive terms of 15 years to life on counts 1, 2, 3, and 5 under section 667.61, subdivision (e)(4), multiple victims.

This appeal followed.

3

## II. DISCUSSION

A. *The Facts Supporting Count 4 and the Kidnapping Enhancements*

A.C. was 20 years old when she testified at trial. The first time defendant abused her was one night when she was seven years old and staying at her grandparents' house. A.C. was sleeping on a sofa bed by herself in the living room while her two siblings were sleeping in a bedroom down the hallway. A.C.'s grandmother and grandfather also slept in a bedroom down the hallway. A.C.'s mother and defendant's wife went out for the evening together. A few hours later, A.C. woke up while defendant was carrying her from the living room to another room down the hallway where defendant and his wife usually stayed while visiting. The room was used for storage and contained bookshelves and an extra bed, consisting of a mattress on the floor. Defendant laid A.C. on the bed and gave her something to drink. Defendant told A.C. that "[t]his will help you sleep." A.C. drank it because defendant told her to drink it and she was brought up to listen to her elders. Defendant took off both of A.C.'s pajama pieces and began to touch her all over, including in her private areas. Defendant placed his fingers inside A.C.'s vagina and put his mouth there as well. Defendant told A.C. something like "[t]his is what every kid goes through," or "[t]his is what happens to every kid." Defendant attempted to have intercourse with A.C., but she cried and yelled "[i]t hurts. It hurts." Defendant stopped. A.C. fell asleep and woke up the next morning in defendant's bed with her clothes on. She did not know how her clothes got back on. A.C. recalls that this sort of thing happened "a few other times, but I just don't remember them as clear as this one."

4

B.  *Defendant's Contentions*

Defendant argues that insufficient evidence supports the jury's true findings of aggravated kidnapping under section 667.61, subdivision (d)(2) and simple kidnapping under section 667.61, subdivision (e)(1).  Specifically, defendant argues the evidence is insufficient to establish either that he moved A.C. a substantial distance or that the movement substantially increased the risk of harm to A.C.

C.  *The Aggravated Kidnapping – Section 667.61, Subdivision (d)(2)*

The crime of aggravated kidnapping requires "movement of the victim [that] is beyond that merely incidental to the commission of, and [which] increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense."  (§ 209, subd. (b)(2); *People v. Dominguez* (2006) 39 Cal.4th 1141, 1153 (*Dominguez*); see also *People v. Rayford* (1994) 9 Cal.4th 1, 12; *People v. Daniels* (1969) 71 Cal.2d 1119, 1130-1131.)  The same requirements apply to aggravated kidnapping, one-strike circumstance findings.  (§ 667.61, subd. (d)(2); *People v. Diaz* (2000) 78 Cal.App.4th 243, 245-246.)  An appellate court will uphold a jury's guilty verdict on the substantive charge and its true finding on the enhancement allegation if they are supported by substantial evidence.  (*Dominguez*, *supra*, at p. 1153; *People v. Diaz*, *supra*, at p. 249.)

There were two interrelated inquiries the jury had to consider.  The first was whether the movement of A.C. was a *substantial distance* and not merely incidental to the intended underlying crime of a lewd act on a child by force.  This required the jury to

5

consider the "'"'scope and nature"'"' of the movement as well as "'"the context of the environment in which the movement occurred.'" (*Dominguez*, *supra*, 39 Cal.4th at pp. 1151, 1153, italics omitted; *People v. Rayford*, *supra*, 9 Cal.4th at p. 12.)  An incidental movement means "'"that the asportation play[s] no significant or substantial part in the planned [offense], or that it be a more or less "'trivial change[] of location having no bearing on the evil at hand.'"' [Citation.]" (*People v. James* (2007) 148 Cal.App.4th 446, 454.)  No minimum distance of movement is required, and the actual distance of the movement is relevant though not determinative of this inquiry.  (*Dominguez*, *supra*, at p. 1152.)

The second inquiry was whether the movement substantially increased the risk of harm to A.C. above and beyond that inherent in the underlying crime.  (*Dominguez*, *supra*, 39 Cal.4th at pp. 1151-1152; *People v. Rayford*, *supra*, 9 Cal.4th at p. 12.)  "'"'"This includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes.  [Citations.]  The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased.  [Citations.]'"'"' (*People v. James*, *supra*, 148 Cal.App.4th at p. 454.)

As noted, "[t]he two elements of the test are related; 'whether the victim's forced movement was merely incidental to the [underlying offense] is necessarily connected to whether it substantially increased the risk to the victim.' [Citation.]  '[E]ach case must be

6

considered in the context of the totality of its circumstances.' [Citation.]" (*People v. James*, *supra*, 148 Cal.App.4th at p. 454.)

Here, the actual distance that defendant moved A.C. was not great in absolute terms. However, in the "'"context of the environment in which the movement occurred"'" (*Dominguez*, *supra*, 39 Cal.4th at p. 1151), it was a substantial distance. Defendant moved A.C. from a common area of the house, where any one of the inhabitants could have freely gone, including the two women who were out for the evening and would have returned by going through the front door and the living room. Defendant moved A.C. to an enclosed room in which defendant could reasonably have expected to be undisturbed, because it was the room assigned to him and his wife for sleeping. Even if defendant's wife were to return during the abuse, defendant would have some warning before she came back to the room in which they were staying. This was no "'"'"trivial change[] of location having no bearing on the evil at hand.'"'"'" (*People v. James*, *supra*, 148 Cal.App.4th at p. 454.) Rather, the movement of A.C. appears to have been a central part of defendant's plan to abuse A.C. with a much reduced chance of being accidentally interrupted by the unpredictable movements of people through the common areas of a home during sleeping hours.

Moving the seven-year-old A.C. from the living room to defendant's sleeping quarters while his wife was out of the house increased the risk to A.C., as stated above, by reducing the chance of detection. In addition, the jury could reasonably have concluded that the movement and the resulting increased privacy enhanced defendant's

opportunity to commit additional crimes. Moving A.C. to a comparatively secluded, private area allowed defendant to completely remove A.C.'s clothes and ultimately to attempt full intercourse. A.C.'s sister, R.C., and the two other female relatives testified that defendant would touch them and force them to touch him, but none testified that defendant attempted intercourse. For this reason it was reasonable for the jury to conclude that the movement of A.C. down the hall involved both a substantial distance within the home environment and an increase in the danger to A.C. by decreasing the chance of detection and increasing the opportunity for defendant to attempt intercourse with A.C. rather than the lewd touching that he normally committed.

D. *The Simple Kidnapping – Section 667.61, Subdivision (e)(1)*

Simple kidnapping requires that the perpetrator move the victim in a substantial manner by use of force or fear, without the person's consent. (*People v. Arias* (2011) 193 Cal.App.4th 1428, 1434-1435; see *People v. Martinez* (1999) 20 Cal.4th 225, 235.) In assessing whether the movement of the victim was substantial rather than slight or trivial, "the trier of fact may consider more than actual distance." (*People v. Martinez*, *supra*, at p. 235.) The jury may consider the totality of the circumstances surrounding the movement, including such factors as whether the movement increased the risk of harm to the victim, decreased the likelihood of detection, increased the danger inherent in a victim's foreseeable attempts to escape, or enhanced the attacker's opportunity to commit additional crimes. (*Id.* at p. 237.)

8

As discussed above regarding the more stringent standard applicable to aggravated kidnapping, the distance that defendant moved A.C. without her consent was in fact substantial under the circumstances.  For this reason substantial evidence supports the jury's finding as to section 667.61, subdivision (e)(1).

### III.  DISPOSITION

The judgment of conviction and sentence are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CUNNISON
J.*

We concur:

RAMIREZ
P. J.

McKINSTER
J.

---

\* Retired judge of the Riverside Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9