Filed 7/22/16  P. v. Jennings CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MAURICE CHARLES JENNINGS,<br><br>    Defendant and Appellant. | D069659<br><br><br><br>(Super. Ct. No. RIF1311017) |

APPEAL from a judgment of the Superior Court of Riverside County, Jeffrey Prevost, Judge.  Affirmed in part, reversed in part, and remanded.

Stephen M. Lathrop, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Lise S. Jacobson, Deputy Attorneys General for Plaintiff and Respondent.

INTRODUCTION

A jury convicted Maurice Charles Jennings of three counts of forcible oral copulation (Pen. Code,[1] § 288a, subd. (c)(2); counts 1, 7, & 8), one count of forcible sexual penetration (§ 289, subd. (a)(l)(A); count 2), one count of assault with the intent to commit rape (§ 220, subd. (a)(1); count 3), two counts of kidnapping for robbery (§ 209, subd. (b)(1); counts 4 & 5), and one count of kidnapping (§ 207, subd. (a); count 6), as a lesser included offense of kidnapping for robbery. As to all counts, the jury found Jennings personally used a firearm when committing the offenses (§§ 1192.7, subd. (c)(8), 12022.53, subd. (b)) (firearm use enhancement). As to counts 4 through 8, the jury found applicable the One Strike law (§ 667.61) burglary circumstance (§ 667.61, subd. (e)(2)), and as to counts 1, 2, 3, 7 and 8, the jury found applicable the One Strike law firearm use circumstance (§ 667.61, subd. (e)(4)).[2] The court additionally found Jennings had a prior serious felony conviction (§ 667, subd. (a)) and a prior strike conviction (§ 667, subds. (b)-(i)). The court imposed both determinate and indeterminate prison sentences, which we discuss in more detail in part IV.A.3, *post*.

Jennings appeals, contending: (1) the court erred in admitting other crimes evidence; (2) there was insufficient evidence to support his kidnapping and kidnapping

---

[1]    Further statutory references are also to the Penal Code unless otherwise stated.

[2]    Unless otherwise stated, our One Strike law references are to the version of the law in effect at the time Jennings committed his crimes. (Former § 667.61, as amended by Stats. 2006, ch. 337, § 33; Initiative (Prop. 83, § 12, as approved by voters, Gen. Elec. (Nov. 7, 2006).)

for robbery convictions; (3) the court erred in imposing One Strike sentences of 25 years to life on counts 1 and 2 because there were no valid One Strike circumstances applicable to these counts; (4) the court erred in imposing a One Strike sentence of 25 years to life, rather than 15 years to life, on count 8 because there was only one valid One Strike circumstance applicable to this count; (5) the One Strike circumstance findings for the three kidnapping convictions should be stricken because the One Strike law does not apply to these offenses; (6) the sentences for great bodily injury enhancements in counts 1, 2, 3, 7 and 8 should be stricken because the prosecution did not allege and the jury did not find true any great bodily injury enhancements in this case; (7) he is entitled to an additional day of presentence custody credit; and (8) the abstract of judgment and minute order should be modified to correct a miscount in his aggregate sentence.

We conclude Jennings's first two points lack merit. We conclude Jennings's third and fourth points are partially meritorious as the court applied one invalid One Strike circumstance for the sentences in counts 1, 2 and 8. The People concede the merits of Jennings's remaining points.

The People also raise some points of their own, specifically contending the court made several other sentencing errors requiring correction, which we discuss in more detail in part V, *post.* Jennings explicitly concedes some of these errors and implicitly concedes others. In light of the errors, he requests we vacate his sentence and remand the matter for resentencing.

We agree the quantity, scope, and magnitude of the sentencing errors in this case warrant a remand for resentencing. In all other respects, we affirm the judgment.

3

BACKGROUND

Jennings entered a massage business operating as a brothel. A French door led from the lobby to a common area in the back of the business. There were three massage rooms accessible from the common area as well as a bathroom, an office, a breakroom for the Latin masseuses (Latin breakroom), and a kitchen area leading to a breakroom for Asian masseuses (Asian breakroom).

Jennings entered one of the massage rooms, where victim 1 met him. Jennings told victim 1 he wanted the "Latin girl," referring to victim 2. Victim 1 left and went to the Asian breakroom. Victim 2 was with someone in an adjacent massage room.

After waiting a bit, Jennings left the massage room and walked through the common area into the Latin breakroom, where victim 2 kept her purse. Jennings then went to the common area, spoke with victim 3, and returned to the massage room.

Victim 3 told victim 1 Jennings had asked for victim 1 to return to the massage room. When victim 1 did so, Jennings directed her to take off her clothes. Victim 1 declined and told Jennings "to just get the massage." Jennings touched her breast and she swatted his hand away, telling him she did not like him. He directed her to sit on the table, which she did. He took a chrome gun out of his pants and set the trigger. She thought she was going to die. He told her he would kill her because she was not treating him the way he wanted to be treated.

Scared, victim 1 begged Jennings, telling him she was wrong and sorry. He pointed the gun at her head, had her kneel down, and directed her to take off her clothes, which she did. While continually pointing the gun at her head, he unzipped his pants,

4

took out his penis, and directed her to orally copulate him.  She touched her mouth to his penis for about a minute, then he directed her to lie down on the bed.  Once she complied, he touched her breast and digitally penetrated her vagina for about two to three minutes, then directed her to get a condom.  After telling him the condoms were in the kitchen area, she dressed and left the massage room with him.  She headed toward the French door separating the common area from the lobby, intending to flee.  However, he put his hand on her back and brought her back into the common area near the office.  She saw victim 3 in the office and said "robber" to victim 3 in Korean.

Jennings demanded money from victim 3 and he and victim 3 walked into the office, where victim 3 gave him an envelope with the day's receipts.  He and victim 3 returned to where victim 1 stood in the common area.  Around this time, victim 2 entered the common area.  Jennings demanded victim 2's money, showed victim 2 the gun in his pocket, and walked all three victims to the Latin breakroom.  Once in the breakroom, he pointed his gun at victim 2 and ordered her to give him her money.  Victim 2 saw that the money in her purse had already been taken, so she gave him the money she had tucked in her bra.[3]

Jennings then demanded victim 1's money.  Since victim 1 kept her money in her handbag, which was in the Asian breakroom, he walked the three victims from the Latin breakroom, through the common area and the kitchen area, into the Asian breakroom.

---

[3]  Victim 2 later discovered her cell phone and car keys had also been taken from her purse.

Once there, victim 1 gave Jennings $700, then victim 3 told him to leave. He said he would not leave because victim 1 was not treating him the way he wanted to be treated. He was angry because victim 1 had tried to flee earlier and he threatened to kill her.

With gun in hand, Jennings ordered the three victims to undress. Victims 1 and 2 undressed, but pleaded with him to leave victim 3 alone because of her age. He ordered victim 3 to lie face down. With gun still in hand, he lowered his pants and ordered victims 1 and 2 to kneel down and orally copulate him. While victim 1 did so, he placed the gun on an armrest of a couch. He then grabbed victim 2 by the hair, put the gun on her head and pulled her face toward his penis, causing her mouth to touch his penis.

The oral copulation continued for about five minutes until the office phone rang. Victim 2 convinced Jennings to let victim 3 answer the phone. Victim 3 went to the office, grabbed the phone, and left the business. Jennings and victims 1 and 2 watched victim 3 leave the business on a security monitor in the Asian breakroom. He said, "shit," pulled up his pants and fled. The jury watched a security video recording of the lobby, common area and exterior of the massage parlor at the time of the crimes.

Police did not identify and arrest Jennings until several years after the incident. As part of the investigation into the identity of the person seen in the security video recording, the police released several still shots from the recording. One of Jennings's extended family members saw the still shots on a news Web site and thought Jennings resembled the robber. She provided the police with a personal video recording of Jennings, which the jury watched. In the personal video recording, Jennings stated that, in 2009, police had severely beaten, assaulted and tasered him, and had beaten and killed

6

his brother in front of him.  He stated he had recently seen "some photos of [himself] being linked to rape."  He stated he was incapable of committing such a crime and the release of the photos was retaliation for a lawsuit he filed against the police department.

Several years after the crimes, victim 1 identified Jennings as the perpetrator in a photographic lineup.  At trial, the extended family member testified Jennings resembled the man in the security video recording, he had a similar gait, and he owned a similar shirt.  She also testified Jennings used to be of a similar weight, but he had lost a significant amount of weight since 2008.

A computer forensic examiner examined a cell phone taken from Jennings after Jennings's arrest.  The phone contained a recent photo of a chrome or silver-plated handgun with a magazine.

DISCUSSION

I

A

1

Over Jennings's objection, the court allowed the prosecutor to admit evidence of two other robberies committed by Jennings.  The first robbery occurred about nine years before the crimes in this case.  As to this robbery, the parties stipulated Jennings "was previously convicted of … robbery, on [September 7, 1999].  When the police pulled over [Jennings] that day, a gun was found in [Jennings's] vehicle along with three live bullets on his person."

7

The second robbery occurred a few months after the crimes in this case. As to this robbery, the owner of an acupuncture and massage business testified Jennings entered the lobby of her business, went into her office, pulled out a gun, and pointed it at an employee standing nearby. The employee covered her face with her hands and shook. Jennings demanded money and the employee quickly pulled out money from her pants pocket. Jennings then pointed the gun at the owner. The owner, who had been in the Chinese army but was not familiar with American guns, wondered if the gun was real because of its light color. She showed him her empty pockets and told him, "No money. No money." Jennings saw her bag next to her and demanded money from her a second time. The owner gave him her money. Jennings also removed a cell phone from her bag. The owner asked him to give the phone back to her, but he threw it into another room and then left. The jury watched a video recording of the robbery.

The purpose of admitting evidence of the first robbery was to show Jennings's intent to commit the crimes charged in this case, including the intent to use an operable firearm. The purpose of admitting evidence of the second robbery was to show both Jennings's intent to commit the crimes charged in this case and his identity.

2

After the court read the stipulation regarding the first robbery, the court informed the jury the stipulation was admitted only for the purpose of determining the intent of the perpetrator of the crimes in this case. Before the prosecutor introduced evidence of the second robbery, the court instructed the jury with a tailored version of CALCRIM No. 375. The instruction informed the jury the prosecutor would be presenting evidence of

another, uncharged robbery and the jury could only consider the evidence if the prosecutor proved Jennings committed the uncharged offense by a preponderance of the evidence. The instruction further informed the jury, "If you decide [Jennings] committed the uncharged offense you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not: One, [Jennings] was the person who committed the offense alleged in this case; or, two, [Jennings] acted with the intent to commit robbery. In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offense and the charged offense. Do not consider this evidence for any other purpose. Do not conclude from this evidence that [Jennings] has a bad character or is disposed to commit crime. [¶] If you conclude that [Jennings] committed the uncharged offense, that conclusion is only one factor to consider along with all of the other evidence. It is not sufficient by itself to prove [Jennings] is guilty of any charge in this case or that any allegation has been proved. The People must still prove each charge and allegation beyond a reasonable doubt."

The court gave two substantially similar instructions to the jury before deliberations. One instruction related to the first robbery and indicated the jury could use the evidence of it for the limited purpose of determining whether Jennings intended to commit the crimes charged in this case. The other instruction related to the second robbery and indicated the jury could only use the evidence of it for the limited purposes of determining whether Jennings was the perpetrator in this case and whether he intended to commit the crimes charged in this case.

9

The court also instructed the jury with CALCRIM No. 303. This instruction informed the jury: "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other."

B

Jennings contends the court abused its discretion and deprived him of a fair trial by allowing admission of the other crimes evidence. He contends admission of the evidence was not necessary to show either intent or identity because neither issue was reasonably disputable. He further contends the evidence was more prejudicial than probative under Evidence Code section 352.

The Supreme Court has articulated the following principles to guide our review: " ' "Evidence that a defendant has committed crimes other than those currently charged is not admissible to prove that the defendant is a person of bad character or has a criminal disposition; but evidence of uncharged crimes is admissible to prove, among other things, the identity of the perpetrator of the charged crimes, the existence of a common design or plan, or the intent with which the perpetrator acted in the commission of the charged crimes. (Evid. Code, § 1101.) Evidence of uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent. [Citation.]" [Citation.]

" ' "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. [Citation.] ... In order to be admissible to prove intent, the uncharged conduct must be sufficiently similar to support the inference

10

that the defendant ' "probably harbor[ed] the same intent in each instance."  [Citations.]'  [Citation.]"  [Citation.]  "A greater degree of similarity is required in order to prove the existence of a common design or plan.  … [E]vidence of uncharged misconduct must demonstrate 'not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are individual manifestations.' "  [Citation.]  "The greatest degree of similarity is required for evidence of uncharged misconduct to be relevant to prove identity.  … [T]he uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts.  [Citation.]  'The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.'  [Citation.]"  [Citation.]  " ' "The highly unusual and distinctive nature of both the charged and [uncharged] offenses virtually eliminates the possibility that anyone other than the defendant committed the charged offense."  [Citation.]' "  [Citation.]

" 'If evidence of prior conduct is sufficiently similar to the charged crimes to be relevant to prove the defendant's intent, common plan, or identity, the trial court then must consider whether the probative value of the evidence "is 'substantially outweighed by the probability that its admission [would] ... create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.'  (Evid. Code, § 352.)" [Citation.]  "Rulings made under [Evidence Code sections 1101 and 352, … ] are reviewed for an abuse of discretion.  [Citation.]"  [Citation.]  "Under the abuse of discretion standard, 'a trial court's ruling will not be disturbed, and reversal ... is not

11

required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Rogers* (2013) 57 Cal.4th 296, 325-326.)

Here, the charges and allegations against Jennings required the prosecutor to prove, among other facts, that Jennings intended to rob the three victims with an operable firearm. Jennings disputed these facts, arguing the video recording of the incident was consistent with a contract dispute over services paid for, but not received, and any gun he may have had was fake. The other crimes evidence was probative of these disputed facts. The evidence of the first robbery was probative of Jennings's intent to use an operable firearm, and the evidence of both robberies was probative of Jennings's intent to commit robbery.[4] The second robbery was particularly probative of Jennings's intent to commit robbery because it occurred close in time to the crimes charged in this case and was markedly similar in that it involved the use of a firearm to rob a massage business's female staff of their money. Although neither other crimes robberies involved a sexual assault, the absence of an associated sexual assault did not preclude the other crimes evidence from being probative. (See *People v. Malone* (1988) 47 Cal.3d 1, 21 [absence of sexual assault does not necessarily prevent uncharged crime from being sufficiently similar to show intent and identity].)

---

[4]    Given this conclusion, we need not determine whether the evidence of the second robbery was probative of Jennings's identity.

12

In addition to being probative, the other crimes evidence was not unduly prejudicial. Neither robbery was more serious or inflammatory than the crimes in this case, neither was too remote in time to be probative, and neither was individually or collectively cumulative. (See *People v. Jones* (2012) 54 Cal.4th 1, 51.) Accordingly, we conclude Jennings has not established the court abused its discretion in admitting the other crimes evidence or that admission of the evidence deprived him of a fair trial. (*People v. Fuiava* (2012) 53 Cal.4th 622, 670.)

II

Jennings next contends we must reverse his convictions for kidnapping for robbery in counts 4 (victim 2) and 5 (victim 1) because there was insufficient evidence to support the asportation element for these offenses. We disagree.

When considering a defendant's challenge to the sufficiency of the evidence, we review the entire record most favorably to the judgment to determine whether the record contains substantial evidence from which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. We do not reweigh evidence or reassess a witness's credibility and we presume the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

"Any person who kidnaps or carries away any individual to commit robbery" is guilty of aggravated kidnapping. (§ 209, subd. (b)(1); *People v. Martinez* (1999) 20 Cal.4th 225, 232 (*Martinez*).) To satisfy the asportation element for aggravated kidnapping, the movement of the victim must have: (1) been more than merely incidental

13

to the underlying crime, and (2) increased the risk of physical or psychological harm to the victim beyond that inherent in the underlying crime. (§ 209, subd. (b)(2); *People v. Vines* (2011) 51 Cal.4th 830, 869-870 & fn. 20 (*Vines*); *People v. Tuan Van Nguyen* (2000) 22 Cal.4th 872, 885-886; *Martinez*, *supra*, at p. 232 & fn. 4.) To determine whether the movement was merely incidental to the underlying crime, the trier of fact must consider the nature and scope of the movement, including the actual distance the victim was moved as well as the environmental context in which the movement occurred. (*Vines*, *supra*, at p. 870; *Martinez*, at p. 233; *People v. Leavel* (2012) 203 Cal.App.4th 823, 833 (*Leavel*).) No minimum distance is required as long as the movement is substantial. (*Vines*, at p. 871, *Martinez*, at p. 233; *Leavel*, *supra*, at p. 833.) To determine whether the movement increased the risk of harm to the victim, the trier of fact must consider such factors as whether the movement decreased the likelihood of the crime's detection, increased the inherent danger of a victim's foreseeable attempts to escape, or enhanced the perpetrator's opportunity to commit additional crimes. (*Vines*, at pp. 870-871; *Martinez*, at p. 233; *Leavel*, at pp. 833-834.)

"The essence of aggravated kidnapping is the increase in the risk of harm to the victim caused by the forced movement." (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152 (*Dominguez*).) Thus, both asportation requirements are necessarily intertwined and determining whether they have been met requires a "multifaceted, qualitative evaluation" of the totality of the circumstances, rather than "a simple quantitative assessment." (*Ibid*.; accord, *Vines*, *supra*, 51 Cal.4th at p. 870, *Martinez*, *supra*, 20 Cal.4th at p. 233; *Leavel*, *supra*, 203 Cal.App.4th at p. 833.) We must consider how all the attendant

14

circumstances, including distance moved, relate to the ultimate question of increased risk of harm. (*Dominguez*, *supra*, at p. 1152.) Consequently, a lengthier movement which does not increase the victim's risk of harm may not satisfy the asportation element while a shorter movement which does increase the victim's risk of harm may. (*Ibid*.)

Here, the evidence showed Jennings moved victims 1 and 2 from a common area to the Latin breakroom and then back through the common area and kitchen to the Asian breakroom. While the common area was visible from the lobby, the breakrooms were not visible from either the lobby, the common area, or from one another. Thus, the movement of the victims to the breakrooms increased Jennings's opportunity to commit additional crimes against them and decreased the likelihood of the crimes' detection. (See *People v. Simmons* (2015) 233 Cal.App.4th 1458, 1472-1474.) Although the movement's dangers need not materialize for the movement to have increased the victims' risk of harm (*Vines*, *supra*, 51 Cal.4th at p. 870), the movement's dangers did materialize in this case. Instead of leaving the business as soon as he obtained the victims' money, Jennings exploited the Asian breakroom's secluded location and forced the victims at gunpoint to orally copulate him. Under these circumstances, we cannot conclude "the 'scope and nature' of this movement was 'merely incidental' to the commission of the robbery." (*Id.* at p. 871.) Rather, the movement served purposes squarely recognized as supporting a finding the asportation element for aggravated kidnapping was met. (*People v. Corcoran* (2006) 143 Cal.App.4th 272, 280.)

15

Jennings similarly contends we must reverse his conviction for kidnapping in count 6 (victim 3) because there was insufficient evidence to support the asportation element for this offense. Again we disagree.

"Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." (§ 207, subd. (a).) "To prove a defendant guilty of kidnapping, the prosecution must establish that (1) the defendant took, held, or detained another person by using force or by instilling reasonable fear; (2) using that force or fear, the defendant moved the other person, or made the other person move a substantial distance; and (3) the other person did not consent to the movement. (§ 207, subd. (a).)" (*People v. Burney* (2009) 47 Cal.4th 203, 232.) Determining whether the prosecution established the second element requires consideration of the totality of the circumstances, including the actual distance the victim is moved as well as whether the movement increased the risk of harm above what existed before the movement, decreased the likelihood of detection, increased the danger inherent in the victim's foreseeable attempts to escape, and increased the perpetrator's opportunity to commit additional crimes. (*Martinez*, *supra*, 20 Cal.4th at p. 237; *People v. Bell* (2009) 179 Cal.App.4th 428, 436.)

Here, the evidence shows Jennings moved victim 3 from the common area to the Latin breakroom and then back through the common area and kitchen to the Asian breakroom. The movement was not merely incidental to the robbery of victim 3 because

the robbery of victim 3 occurred before the movement. (See *People v. Delacerda* (2015) 236 Cal.App.4th 282, 291.) The movement increased victim 3's risk of harm because she was moved from a visible area to a secluded area, making it less likely for Jennings's additional crimes to be detected. (See *id.* at p. 295; *People v. Arias* (2011) 193 Cal.App.4th 1428, 1435.) "These factors support the asportation requirement for kidnapping." (*People v. Arias*, *supra*, at p. 1435.)

IV

A

1

Part of Jennings's sentence fell within the purview of the One Strike law because the jury found some One Strike circumstances applied in this case. The One Strike law sets forth an alternative, harsher sentencing scheme for certain sex crimes. At the time of the offenses in this case, the law provided for a sentence of 15 years to life for a qualifying offense committed under one or more of the circumstances listed in section 667.61, subdivision (e). (§ 667.61, subd. (b), (e).) The law additionally provided for a sentence of 25 years to life for a qualifying offense committed under two or more of the circumstances listed in section 667.61, subdivision (e), or one or more of the circumstances listed in section 667.61, subdivision (d). (§ 667.61, subds. (a), (d), (e).) The law further provided the alternative penalties applied "only if the existence of any circumstances specified in [section 667.61] subdivision (d) or (e) is alleged in the accusatory pleading …, and is either admitted by the defendant in open court or found to be true by the trier of fact." (§ 667.61, subd. (j).)

17

2

a

The pleadings in this case evolved considerably from the case's inception until its submission to the jury. The initial pleading, the felony complaint, contained five counts: three alleging forcible oral copulation, one alleging assault to commit rape, and one alleging kidnapping for robbery. Each count alleged a firearm use enhancement and a One Strike law burglary circumstance. Each count also included words alleging a One Strike law firearm use circumstance, but cited to the code section for a One Strike law great bodily injury circumstance. Two of the forcible oral copulation counts each alleged One Strike law aggravated kidnapping and kidnapping circumstances. None of the counts alleged a One Strike law multiple victim circumstance.

The next pleading, the information, alleged eight counts: two counts of forcible oral copulation, two counts of forcible penetration, one count of attempted rape, one count of assault to commit rape, one count of kidnapping for robbery, and one count of robbery. All but the robbery count alleged a firearm use enhancement. The two forcible oral copulation counts and the two forcible penetration counts each alleged One Strike law aggravated kidnapping, kidnapping, and burglary circumstances. These same counts also each alleged a One Strike law great bodily injury circumstance and correctly cited to the code section for this circumstance. None of the counts alleged One Strike law firearm use or multiple victim circumstances.

Just before the commencement of jury selection, the prosecution amended the information by interlineation to change the robbery count to a kidnapping for robbery

18

count. The amendment did not change any of the enhancement or One Strike circumstance allegations.

Immediately after presenting its case-in-chief and without objection from Jennings, the prosecution filed the operative pleading in this case, the second amended information. The second amended information alleged eight counts: three counts of forcible oral copulation, three counts of kidnapping for robbery, one count of forcible sexual penetration, and one count of assault with intent to commit rape. Each count alleged a firearm use enhancement and a One Strike law burglary circumstance. All but the kidnapping for robbery counts also alleged a One Strike law great bodily injury circumstance, again citing to the correct code section for this circumstance. None of the counts alleged a One Strike law firearm use circumstance; however, the last paragraph under the count 8 heading alleged a One Strike law multiple victim circumstance (§ 667.61, subd. (e)(4)).

b

i

Before closing arguments, in response to Jennings's motion for entry of a judgment of acquittal (§ 1118), the prosecution conceded there was insufficient evidence to support the burglary circumstance allegations in counts 1 and 2. In the light of the prosecution's concession, the court dismissed the burglary circumstance allegations for these counts.

19

ii

The court subsequently instructed the jury on the burglary circumstance allegation, indicating the instruction applied to counts 4 through 8. The court did not indicate the instruction applied to count 3, even though count 3 included a burglary circumstance allegation. The court also instructed the jury on the multiple victim circumstance allegation, indicating, without objection from Jennings, the instruction applied to counts 1, 2, 3, 7 and 8. The court did not instruct the jury on the great bodily injury circumstance; however, without objection from Jennings, the court instructed the jury on the firearm use circumstance, indicating the instruction applied to counts 1, 2, 3, 7 and 8.

iii

The jury received and returned verdicts finding the burglary circumstance occurred during the commission of the offenses in counts 4, 5, 6, 7, and 8, but not during the commission of the offense in counts 1 through 3. The court later struck the verdicts as to counts 1 and 2 because of the previously entered judgment of acquittal.

The jury also received and returned verdicts finding the firearm use circumstance occurred during the commission of the crimes in counts 1, 2, 3, 7 and 8. The jury did not receive or return any verdicts relating to the great bodily injury circumstance allegations or the multiple victim circumstance allegation.

iv

Because of the absence of jury findings on the multiple victim circumstance allegation, the court indicated it would likely strike the allegation at the sentencing

20

hearing. However, the matter was not specifically discussed at the hearing and the court proceeded to sentence Jennings as if the jury had made the requisite finding.

3

The probation officer's report prepared for the hearing recommended a sentence of 248 years to life in state prison; however, both the prosecution and the court expressed the view Jennings should not receive the maximum possible sentence. After taking a brief recess to "run some numbers," the court sentenced Jennings as follows:

For count 1, a term of 25 years to life under the One Strike law plus consecutive terms of 10 years for the firearm use enhancement and three years for a great bodily injury enhancement;

For count 2, a concurrent term of 25 years to life under the One Strike law plus a concurrent three-year term for a great bodily injury enhancement and a stayed consecutive 10-year term for the firearm use enhancement;

For count 3, a concurrent four-year term, doubled to eight years for the prior strike conviction, plus a concurrent three-year term for a great bodily injury enhancement and a stayed consecutive 10-year term for the firearm use enhancement;[5]

For count 4, a concurrent term of seven years to life plus a stayed consecutive 10-year term for the firearm use enhancement;

---

[5] Although the court originally imposed a concurrent sentence for this count, it later stated it had imposed a consecutive sentence. We need not resolve the discrepancy because we are remanding the matter for resentencing. (See part VI, *post*.)

For count 5, a concurrent term of seven years to life plus a stayed consecutive 10-year term for the firearm use enhancement;

For count 6, a consecutive five-year term, doubled to 10 years for the prior strike conviction, plus a stayed consecutive 10-year term for the firearm use enhancement;

For count 7, a concurrent term of 25 years to life under the One Strike law plus a concurrent three-year term for a great bodily injury enhancement and a stayed consecutive 10-year term for the firearm use enhancement; and

For count 8, a consecutive term of 25 years to life under the One Strike law plus stayed terms of 10 years for the firearm use enhancement and three years for a great bodily injury enhancement.  The court also imposed a consecutive five-year term for the prior serious felony conviction.

B

The anomalies in the handling of the One Strike circumstance allegations have prompted several sentencing-related issues.  Starting with the easiest to resolve, Jennings contends the One Strike circumstance findings attendant to his kidnapping and aggravating kidnapping convictions in counts 4 through 6 must be stricken because the One Strike law does not apply to these offenses.  He is correct.  (§ 667.61, subd. (c).)  The People properly concede the issue.  The People also properly request we dismiss the One Strike circumstance finding attendant to Jennings's assault with intent to commit rape conviction in count 3 for the same reason.

22

C

Next, while the second amended information alleged a great bodily injury circumstance for each count, it did not separately allege any great bodily injury enhancements under sections 12022.7, subdivision (a), and 12022.8. In addition, the court did not instruct the jury on and the jury did not make findings as to any great bodily injury circumstance or great bodily injury enhancement allegations. Nonetheless, as part of the sentences for counts 1, 2, 3, 7 and 8, the court imposed three-year terms for great bodily injury enhancements. Jennings contends, the People concede, and we agree these three-year terms must be stricken because the prosecution did not plead and prove any great bodily injury enhancements. (See *People v. Mancebo* (2002) 27 Cal.4th 735, 754 (*Mancebo*) [appellate court properly strikes sentencing enhancements not properly pleaded or proven].)

D

Turning to more complex issues, the court's One Strike sentences for counts 1, 2 and 8 assume application of both the firearm use circumstance and the multiple victim circumstance. Jennings contends we must reverse the One Strike sentences for counts 1 and 2 and reduce the One Strike sentence for count 8 because the prosecution did not properly plead the firearm use circumstance and the prosecutor did not properly plead or prove the multiple victim circumstance. We agree in part.

1

Regarding the firearm use circumstance, "the express pleading requirements of section 667.61, subdivisions (f) and (i), read together, require that an information afford a

23

One Strike defendant fair notice of the qualifying statutory circumstance or circumstances that are being pled, proved, and invoked in support of One Strike sentencing. Adequate notice can be conveyed by a reference to the description of the qualifying circumstance (e.g., kidnapping, tying or binding, gun use) in conjunction with a reference to section 667.61 or, more specifically, 667.61, subdivision (e), or by reference to its specific numerical designation under subdivision (e), or some combination thereof." (*Mancebo*, *supra*, 27 Cal.4th at pp. 753-754.) "[I]n addition to the statutory requirements that [the qualifying circumstance or circumstances] be pleaded and proven, a defendant has a cognizable due process right to fair notice of the specific [circumstance] allegations that will be invoked to increase punishment for his crimes." (*Id.* at p. 747.)

Here, there is no question the prosecutor failed to properly plead the firearm use circumstance. The allegations in the felony complaint were ambiguous because it contained words alleging the firearm use circumstance, but it cited the code section for the great bodily injury circumstance. The information and second amended information remedied the ambiguity, but not in favor of alleging the firearm use circumstance. Rather, these pleadings both contained words alleging the great bodily injury circumstance and cited the corresponding code section for this circumstance.

Nonetheless, we conclude the prosecution's failure to properly plead the firearm use circumstance did not affect the court's One Strike sentences in this case. The complaint, the information, and the second amended information all alleged One Strike circumstances as well as firearm use enhancements. Collectively, the allegations

24

provided Jennings notice the prosecutor was seeking to bring any potential sentence within the purview of the One Strike law and to increase any potential sentence due to Jennings's personal firearm use. Indeed, Jennings's firearm use was a key issue at trial. (See part I, *ante*.) Jennings's actual appreciation of the prosecution's sentencing objectives and his implicit consent to their eventual melding was evidenced by Jennings's failure to object to the instructions, arguments, or verdicts on the firearm use circumstance. Accordingly, Jennings forfeited any challenge to the court's application of the firearm use circumstance in sentencing him. (See *People v. Houston* (2012) 54 Cal.4th 1186, 1229 [defendant forfeited claim of sentencing error based on the violation of statutory pleading requirements where the defendant knew the sentencing ramifications of a conviction before the jury received the case, the court properly instructed the jury on the factors affecting sentencing, and the jury made express findings on the facts affecting sentencing].)

2

Regarding the multiple victim circumstance, the parties do not dispute the second amended information pleaded this circumstance. Rather, the parties dispute whether the multiple victim circumstance allegation applied only to count 8, where it appears, or to the other counts as well. Conflicting views on this point are emerging within the appellate courts. One appellate court recently held "[t]he People must allege the specific One Strike law circumstances it wishes to invoke as to each count it seeks to subject to the One Strike law's heightened penalties." (*People v. Perez* (2015) 240 Cal.App.4th 1218, 1227 (*Perez*).) Another appellate court recently held the bright-line pleading rule

25

established in *Perez* is overbroad, and it is sufficient for due process and statutory purposes if the prosecutor corrects any One Strike circumstance pleading deficiencies at the preliminary hearing and delivers a transcript of the preliminary hearing to the defendant. (*People v. Mariscal* (2016) 247 Cal.App.4th 403, 415, petn. for review pending, petn. filed June 21, 2016.)

However, we need not address the conflict to resolve this appeal. Assuming, without deciding, the prosecution properly pleaded the multiple victim circumstance in this case, the court improperly applied the circumstance during sentencing because the jury did not find the circumstance allegation to be true, as expressly required by section 667.61, subdivision (j). (See *People v. Nilsson* (2015) 242 Cal.App.4th 1, 15-17 [where a statute authorizing a sentencing enhancement contains an unambiguous pleading and proof requirement, a court may not impose the enhancement if the jury was not tasked with determining and did not determine the truth of the enhancement allegation, even if the evidence supports its truth].) The prosecution's failure to take the necessary steps to obtain a jury verdict on the multiple victim circumstance constitutes a waiver of the circumstance's application.[6] (See *People v. Salas* (2001) 89 Cal.App.4th 1275, 1282-1283 [prosecution waives application of sentence enhancement by failing to take steps at trial to secure verdicts].) Therefore, the sentences for counts 1, 2 and 8 must be modified to the extent they are based on the application of the multiple victim circumstance.

---

[6] Given this conclusion, we need not address whether the court's application of the multiple victim circumstance was harmless error. (*Mancebo*, *supra*, 27 Cal.4th at p. 749 [no need for a harmless error analysis where the waiver doctrine applies].)

26

V

A

Proper application of the One Strike law was not the only problematic aspect of Jennings's sentence. Again beginning with the easiest issue to resolve, the court awarded Jennings 457 days of presentence credit, consisting of 397 days of custody credit and 60 days of conduct credit. Jennings contends, the People concede, and we agree Jennings is entitled to one additional day of presentence credit.

A defendant sentenced to state prison is entitled to presentence custody credit against his prison term for each day he spent in custody before sentencing. (§ 2900.5, subd. (a).) In addition, at the time Jennings committed the offenses in this case, a defendant could earn presentence conduct credit for work and good behavior at the rate two days for every four days in custody. (*People v. Chilelli* (2014) 225 Cal.App.4th 581, 587; *People v. Garcia* (2012) 209 Cal.App.4th 530, 534; former § 4019, subds. (b), (c), as amended by Stats. 1982, ch. 1234, § 7.) However, for a defendant like Jennings, who is convicted of a violent felony, the amount of earnable presentence conduct credit is limited to 15 percent of the amount of presentence custody credit. (§§ 667.5, subd. (c), 2933.1, subd. (a), (c).)

Jennings was arrested on September 27, 2013, and sentenced on October 30, 2014, which is 399 days. Consequently, the court should have awarded him 399 days of presentence custody credit and 59 days of presentence conduct credit (15 percent of 399), for a total of 458 days of presentence credit.

27

B

Among its verdicts, the jury found firearm enhancement allegations true for each count. The court imposed consecutive 10-year terms for the enhancement as to each count, but stayed imposition of the sentence as to counts 2 through 8.

The People contend and Jennings agrees the court erred in failing to stay the term for the firearm use enhancement for count 1 because the firearm use circumstance was necessary to the court's One Strike sentence. (See part IV.A.3 and D.1, *ante*.) If a One Strike circumstance is necessary and used to impose a One Strike sentence, the same circumstances cannot be used to impose punishment under another provision of the law. (§ 667.61, subd. (f) ["If only the minimum number of circumstances … that are required for [a One Strike sentence] to apply have been pled and proved, that circumstance or those circumstances shall be used as the basis for imposing [the One Strike sentence], rather than being used to impose the punishment authorized under any other provision of law, unless another provision of law provides for a greater penalty or the punishment under another provision of law can be imposed in addition to the punishment provided by this section"].)

The firearm use circumstance was also necessary to the court's One Strike sentences for counts 7 and 8. (See part IV.A.3 and D.1, *ante*.) Therefore, the court correctly stayed the terms for the firearm use enhancements for these counts. However, as the One Strike law does not apply to counts 3 through 6 (see part IV.B, *ante*), the court had no basis to stay the terms for the firearm use enhancements for these counts. (§ 12022.53, subd. (b); *People v. Oates* (2004) 32 Cal.4th 1048, 1056.)

28

## C

Before sentencing Jennings, the court found true an allegation Jennings had a prior strike conviction and declined Jennings's invitation to dismiss the finding under section 1385.  Given the court's decision, the People contend, Jennings implicitly concedes, and we agree the court erred by failing to double the minimum term for the indeterminate sentences it imposed.  Under sections 667, subdivision (e)(1), and 1170.12, subdivision (c)(1), if the prosecution has pleaded and proved one prior strike conviction, " 'the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction."  (*People v. Acosta* (2002) 29 Cal.4th 105, 109.)

## D

Before sentencing Jennings, the court further found true an allegation Jennings had a prior serious felony conviction.  The court only imposed one five-year term for this enhancement finding.  The People contend the court was required to impose a sentence for this enhancement finding on each count with an indeterminate term.  Jennings implicitly concedes this point.

Under the determinate sentencing law, a prior serious felony sentence enhancement may only be imposed once as part of the aggregate sentence for multiple determinate terms.  (*People v. Sasser* (2015) 61 Cal.4th 1, 17.)  This limitation does not apply to indeterminate sentences.  (*People v. Williams* (2004) 34 Cal.4th 397, 402.)  Accordingly, the court should have imposed one five-year prior serious felony conviction

sentence enhancement as part of Jennings's aggregate determinate sentence as well as for each count with an indeterminate term.  (See *id.* at p. 404.)

VI

In his reply, Jennings requests we remand the matter for resentencing rather than attempt to recalculate his sentence on appeal.  We agree a remand for resentencing is warranted given the quantity, scope and magnitude of the sentencing issues identified on appeal; the existence of some discretionary sentence choices for the court; and the prosecution's stated intent not to seek and the court's stated intent not to impose the maximum possible sentence.  (See *People v. Navarro* (2007) 40 Cal.4th 668, 681 [significant changed circumstances warrant remand for a resentencing to allow the trial court to exercise its sentencing discretion in light of the changed circumstances].)  Since we are remanding the matter for resentencing, we need not address Jennings's contention the court miscounted his aggregate sentence.

DISPOSITION

The sentence is vacated and the matter is remanded for resentencing in accordance with this opinion.  In particular, the sentence upon remand should reflect the following enhancements and One Strike circumstances:  counts 1 and 2—firearm use enhancement (stayed) and firearm use circumstance; counts 3 through 6—firearm use enhancement; and counts 7 and 8—firearm use enhancement (stayed), burglary circumstance, and firearm use circumstance.  The sentence should also reflect one five-year prior serious felony conviction enhancement for the combined counts with determinate terms and one

30

five-year prior serious felony conviction sentence enhancement for each count with an indeterminate term.  Finally, unless the court chooses to exercise its discretion to dismiss the prior strike conviction finding, the sentence for each count should reflect the existence of the finding.  Upon resentencing, the clerk of the superior court is directed to prepare a new abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


NARES, J.


31