Filed 2/9/23 P. v. Garcia CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ALEJANDRO HERNANDEZ GARCIA,<br><br>    Defendant and Appellant. | G060566<br><br>(Super. Ct. No. 17HF1025)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett, Judge. Affirmed in part, reversed in part, and remanded for resentencing.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

Alejandro Hernandez Garcia appeals from a judgment after he was convicted, by court trial, of numerous sexual offenses and "one strike" kidnapping allegations against two victims, S.E. and S.B. Garcia argues the following: the trial court erred by denying his motion for judgment of acquittal on the kidnapping allegations, recent legislation requires we remand for resentencing, and the court erred by imposing three fines.

Although we agree recent legislation requires we remand for resentencing and the trial court erred by imposing three fines, his other contention is meritless. We reverse the sentences on the two counts concerning S.B. and order three fines stricken. In all other respects, we affirm the judgment.

## FACTS

### I. S.E.

One afternoon, 16-year-old S.E. was walking home from work and stopped at her friend B.M.'s house. Minutes later, B.M. began walking S.E. home in an alley.

Nearby, B.M. recognized three men sitting on a couch in a garage—Froggy, Tijuas, and Tiburon, i.e., Garcia. S.E. did not know them. Garcia was "smashing" a white substance with a card and snorting it.

B.M. sat on the couch and talked to Froggy while S.E. stood nearby. Tijuas went outside to smoke a cigarette. B.M. got up and left quickly. S.E. stood there trying to figure out why B.M. "left so fast."

There was conflicting evidence about where S.E. stood before she was sexually assaulted. The day after the sexual offenses, S.E. told an officer she entered the garage. At trial, S.E. initially testified she was standing on the threshold of the garage, she stepped outside of the garage, and Garcia grabbed her wrist and pulled her back into the garage. The following day, S.E. agreed when the prosecutor asked whether she was standing on the threshold of the garage. On cross-examination, S.E. denied going into the

garage. She said she was standing on the threshold of the garage. On redirect examination, when asked, S.E. said she was standing just outside the garage when Garcia pulled her back into the garage. B.M. testified S.E. was inside the garage.

Garcia forcefully grabbed S.E.'s left wrist and pulled her inside the garage about three feet. He pulled her again, another three to five feet, and forced her down onto the couch. S.E. was afraid. Garcia was strong and she did not believe she could get away from him.

Garcia told S.E. that he knew where her family lived. He threatened to kill her family and boyfriend if she did not let him do "whatever he want[ed]" to her. Meanwhile, Tijuas closed the garage door leaving Garcia alone with S.E.

Garcia kissed S.E. on her neck and removed her shirt and bra. S.E. did not fight back because she believed he would hurt her family. Garcia sucked, bit, and pinched S.E.'s breasts. He removed her pants and underwear and licked her vagina. He inserted his fingers into her vagina and then her anus. He forced S.E.'s head down and made her suck his penis. Garcia forced S.E. to snort a white substance that made her heart race.

Tijuas unlocked the garage door and reentered the garage to deliver beer. When Tijuas saw the naked S.E. covered only with a blanket, he laughed. He shut and locked the garage door.

Garcia resumed sexually assaulting S.E. He inserted his fingers into her vagina and anus, licked her vagina, and forced her to suck his penis. He inserted the tip of his penis into her vagina but he got angry because his penis was small and he was not "getting any . . . pleasure." He inserted his penis into her anus with the same result.

Hours later, B.M. knocked on the garage door and called for S.E. Garcia covered S.E.'s mouth and told her to "'shut up.'"

3

Later, B.M. returned with two men. She banged on the garage door. When Tijuas unlocked and opened the garage door, B.M. took S.E. away.

S.E. told her brother's girlfriend what Garcia had done to her. After S.E.'s parents learned what happened, they took her to the hospital. A sexual assault examination revealed bruising to her breasts and significant injuries consistent with vaginal and anal penetration. Garcia's DNA was found on S.E.'s underwear.

A year later, S.E. and B.M. were walking in the same alley. S.E. saw Garcia, recognized him as her attacker, and punched him. When he fought back, B.M. intervened. Police responded.

II. S.B.

One month after Garcia raped S.E., 19-year-old S.B. was at a park with her friends drinking alcohol. Around midnight, S.B. drove her friends home. On her way home, she got lost and her cell phone battery died so she could not use the map on her phone. She stopped at a gas station to charge her phone without success.

As S.B. exited the gas station, a woman told her that she could charge her phone in her vehicle. S.B. accepted. Garcia was sitting in the driver's seat smoking methamphetamine. The woman stood outside the passenger side while S.B. stood next to the woman while her phone charged.

The woman offered S.B. a cold beer, which she accepted. About 15 minutes later, S.B. felt weird and began to black out. S.B. was sitting in the passenger seat, but she did not know how she got there. Garcia was driving the vehicle, and the woman was in the backseat. S.B. said she wanted to get out. When the woman said Garcia wanted to have sex with her, S.B. said, "No." Garcia and the woman argued in Spanish, and he dropped off the woman.

The next thing S.B. remembered was lying in the back of the vehicle with Garcia on top of her. He was moving back and forth making grunting noises. S.B. was blacking out and unable to move. When S.B. regained consciousness, her vaginal area

4

hurt—she knew Garcia had raped her. Garcia dropped her off at the gas station, threw a $5 bill at her, and drove away.

S.B. called the police and had a sexual assault examination. Garcia's DNA was found in a sample taken from S.B.'s vagina.

An information charged Garcia with the following: S.E.—forcible rape (Pen. Code, § 261, subd. (a)(2)[1] (count 1)), two counts of forcible sexual penetration by a foreign object (§ 289, subd. (a)(1)(A) (counts 2 & 3)), two counts of forcible oral copulation (§ 288a, subd. (c)(2)(A) (counts 4 & 5)), forcible sodomy (§ 286, subd. (c)(2)(A) (count 6)); and S.B.—rape of an intoxicated person (§ 261, subd. (a)(3) (count 7)), and assault with the intent to commit a sexual offense (§ 220, subd. (a)(1) (count 8)). With respect to counts 1 to 6, the information alleged he committed kidnapping pursuant to the one strike law (§ 667.61, subds. (a), (d)(2)).

Garcia waived his right to a jury trial. After the close of the prosecution's case-in-chief, the trial court denied Garcia's motion for judgment of acquittal on the kidnapping allegations (§ 1118).[2] Garcia did not offer any evidence.

The trial court found Garcia guilty on counts 1 through 6 and 8. With respect to count 7, the court found him guilty of the lesser included offense of attempted rape of an intoxicated person (§§ 664, subd. (a), 261, subd. (a)(3)). The court found the kidnapping allegation true as alleged.

At the sentencing hearing, the trial court indicated it had read the probation report, sentencing briefs, and victim impact statements. The court sentenced Garcia to consecutive terms of 25 years to life on counts 1 to 6. The court explained it did not have discretion to dismiss the one strike allegations, but if it did, it would not. The court

---

[1]     All further statutory references are to the Penal Code.

[2]     The Attorney General cites to section 1118.1. That section applies when there is a jury trial. This was a court trial.

imposed the upper term of six years on count 8. The court imposed and stayed the upper term of four years on count 7. Garcia's total prison sentence was 156 years to life. The court imposed various fines and fees including $1,500 (§ 667.6, subd. (f) [victim-witness assistance fund]), $70 (§ 264, subd. (b) [AIDS education fund]), and $70 (§ 286, subd. (m) [AIDS education fund]).

## DISCUSSION

### I. *Section 1118—One Strike Allegations*

Garcia argues the trial court erred by denying his motion for judgment of acquittal on the one strike kidnapping allegations as to S.E. We disagree.

Section 667.61, subdivisions (a), (c), and (d)(2), requires the imposition of a sentence of 25 years to life for kidnapping to commit specified sex offenses. Section 667.61, subdivision (d)(2), requires the increased penalty if the defendant "kidnapped the victim of the present offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense."

"'The plain wording of this enhancement requires two elements: (1) a simple kidnapping [citation]; and (2) a substantial increase in the risk of harm to the victim.' [Citation.] In addition, the asportation element of the aggravated kidnapping enhancement 'requires movement of the victim that is more than incidental to the underlying sex offense.' [Citation.]" (*People v. Perkins* (2016) 5 Cal.App.5th 454, 465 (*Perkins*).)

### A. *Background*

In his motion for judgment of acquittal, Garcia focused in large part on the second element. He argued that grabbing S.E.'s wrist and pulling her six feet into the garage did not substantially increase the risk of harm. He asserted it was Tijuas's act of closing the garage door, in which he did not collaborate, that increased the risk of harm.

6

He asserted though that six feet was not a substantial distance. The prosecution filed sealed opposition.

At the hearing, although Garcia's counsel contended "six to eight feet" was "a very short distance." Much of counsel's argument focused on the second element. Counsel stressed there was no evidence he acted in concert with Tijuas in closing the garage door. The prosecutor stated S.E. consistently stated she was at or near the threshold of the garage, but it was irrelevant. He asserted S.E.'s testimony was clear Garcia pulled her inside the garage and that increased the risk of harm.

The trial court stated it could simply rule on the motion but it would "make some observations" because it was a court trial. The court found the distance Garcia moved S.E. was numerically short, but the surrounding circumstances established the movement increased the risk of harm. The court opined Garcia acted in concert with Tijuas in closing the garage door. The court explained the closing of the garage door decreased the risk of detection and increased the victim's risk in attempting to escape and the opportunity to commit additional crimes. The court denied the motion.

B. Analysis

"In assessing a claim of insufficiency of the evidence, the reviewing court's task is to 'review the whole record in the light most favorable to the judgment . . . to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] Where a defendant challenges the sufficiency of the evidence at the conclusion of the prosecution's case-in-chief under section 1118, the reviewing court must view the evidence as it stood at the end of the prosecution case. [Citation.]" (*People v. Ringo* (2005) 134 Cal.App.4th 870, 880.)

Garcia challenges only the first element. He expressly states he is not challenging the trial court's factual and legal conclusions (1) Tijuas closed the garage door at his direction or in concert with him and (2) the closed garage door decreased the risk of detection and increased the risk of harm.

Garcia argues the trial court erred by relying on Tijuas's closing of the garage door to satisfy the asportation element. Garcia criticizes the trial court for not making the "factual determination whether [S.E.] was moved from outside the garage to inside the garage or was instead simply prevented from leaving the garage." We disagree with Garcia "the trial court made a legal determination, based on the prosecutor's argument, that it was irrelevant whether [S.E.] was moved from outside to inside because movement within the garage coupled with the door shutting was enough to establish kidnapping." (See *People v. Butcher* (1986) 185 Cal.App.3d 929, 936 [appellate court may consider trial court's statement when they disclose legal error].)

At the beginning of the hearing, the court stated it could simply rule on the motion but it would "make some observations" because it was a court trial. After citing to *Perkins, supra,* 5 Cal.App.5th 454, which concerned the second element, "the issue that's really being focused upon here," the court provided its reasoning. Based on a complete reading of the record, the court's statements do not disclose an incorrect understanding of the relevant law. Instead, the court's statements disclose it was focused on Garcia's primary argument. Garcia cites to no authority, and we found none, that required the trial court to make the factual determination he now claims was legal error.

Citing to *People v. Martinez* (1999) 20 Cal.4th 225 (*Martinez*),[3] Garcia asserts section 667.61, subdivision (d)(2), requires "a person is moved from one environment to another different environment." The Attorney General states it "does not

---

[3] *Martinez* was overruled on other grounds in *People v. Fontenot* (2019) 8 Cal.5th 57, 72.

8

read *Martinez* as setting forth this movement requirement, nor can [he] find any support in the law elsewhere to support this assertion."

In *Martinez, supra,* 20 Cal.4th at page 236, our Supreme Court stated the following: "The two prongs of aggravated kidnapping are not distinct, but interrelated, because a trier of fact cannot consider the significance of the victim's changed *environment* without also considering whether that change resulted in an increase in the risk of harm to the victim. Thus, for simple kidnapping asportation, movement that is 'substantial in character' arguably should include some consideration of the 'scope and nature' of the movement or changed *environment*, and any increased risk of harm." (Italics added.)

"The essence of aggravated kidnapping is the increase in the risk of harm to the victim caused by the forced movement. [Citation.] We have articulated various circumstances the jury should consider, such as whether the movement decreases the likelihood of detection, increases the danger inherent in a victim's foreseeable attempts to escape, or enhances the attacker's opportunity to commit additional crimes. [Citation.]" (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152.) "Measured distance, therefore, is a relevant factor, but one that must be considered in context, including the nature of the crime and its environment. In some cases a shorter distance may suffice in the presence of other factors, while in others a longer distance, in the absence of other circumstances, may be found insufficient. . . . [E]ach case must be considered in the context of the totality of its circumstances." (*Ibid*.)

Here, substantial evidence supports the trial court's implied finding the scope and nature of the movement or changed environment increased the risk of harm to S.E. The evidence demonstrated S.E. was standing on the threshold of the garage or just outside the garage when Garcia pulled her backwards into the garage, a distance of six to eight feet, to the back of the garage where he forced her down onto the couch. Tijuas

9

closed and locked the garage door, and Garcia proceeded to sexually assault S.E. for two to three hours before she was freed.

While the actual distance Garcia moved S.E. was not great, it was sufficient to constitute substantial movement within the meaning of the aggravated kidnapping provisions. Contrary to Garcia's claim the evidence established false imprisonment and not kidnapping, he changed the environment when he pulled S.E. into the garage. The scope and nature of Garcia pulling S.E. into the garage changed her environment from an open area where a passersby could see her to a secluded environment where she was at Garcia's mercy. By pulling her into the garage, Garcia decreased the likelihood she would be detected, increased the danger inherent in her trying to escape, and enhanced the likelihood Garcia would commit additional crimes. "'[A] rape victim is certainly more at risk when concealed from public view and therefor more vulnerable to attack.' [Citation.]" (*People v. Robertson* (2012) 208 Cal.App.4th 965, 985 (*Robertson*).) This case was more like dragging a store owner nine feet from the front counter of the store to a small back room for the purpose of raping her (*People v. Shadden* (2001) 93 Cal.App.4th 164, 167) than moving a minor 10 to 30 feet inside a small private residence from one room to another (*Perkins, supra,* 5 Cal.App.5th at p. 470).

The movement was not incidental to the sexual offenses—he could not have simply committed the crimes where he found her. "'Where a defendant drags a victim to another place, and then attempts a rape, the [trier of act] may reasonably infer that the movement was neither part of nor necessary to the rape.' [Citation.]" (*Robertson, supra,* 208 Cal.App.4th at p. 984.) The trial court did not err by denying Garcia's motion for judgment of acquittal in the one strike kidnapping allegations.

## II. Recent Sentencing Legislation

Garcia argues we must remand the matter for the trial court to exercise its discretion pursuant to Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731,

10

§ 1.3) (SB 567), and Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 441, § 1) (AB 518), legislation that became effective after the court imposed sentence. The Attorney General agrees the legislation applies retroactively to Garcia. However, he contends remand is unnecessary because the court intended to impose the maximum sentence possible.

At the time of sentencing, former section 1170, subdivision (b), provided that the choice between sentencing a defendant to the lower, middle, or upper term "shall rest within the sound discretion of the court," with the court to determine which term "best serves the interests of justice." SB 567 amended section 1170 to provide that trial courts must impose the lower term (unless contrary to the interests of justice) if certain circumstances contributed to the commission of the offense. (§ 1170, subd. (b)(6).)

At the time of sentencing, former section 654, subdivision (a), required that a defendant who committed an act punishable by two or more provisions of law be punished under the provision that provided for the *longest* possible term. AB 518 amended section 654, subdivision (a), to permit an act or omission punishable under two or more provisions of law to "be punished under either of such provisions." In other words, AB 518 amended section 654, subdivision (a), to give trial courts discretion not to impose the provision providing for the longest term of imprisonment.

The parties agree SB 567 and AB 518 apply retroactively to judgments— like Garcia's here—that were not final at the time the legislation took effect. (*In re Estrada* (1965) 63 Cal.2d 740, 745 [Legislature intends ameliorative amendments to apply to every case to which it could constitutionally apply absent evidence of contrary legislative intent]; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038-1039 [SB 567 applies retroactively]; *People v. Mani* (2022) 74 Cal.App.5th 343, 379 [AB 518 applies retroactively].)

The Attorney General asserts remand is unnecessary because the trial court indicated that if it had the discretion it would not dismiss or strike the one strike allegations. The one strike allegations concerned counts 1 to 6 as to S.E. We are concerned here with counts 7 and 8 regarding S.B. The Attorney General concedes, "The court did not make any findings on the record when imposing upper term sentences on counts 7 and 8." He states "it appears" the trial court relied on the following aggravating circumstance listed in the probation report to support the upper term sentences on these counts—Garcia engaged in violent conduct indicating a serious danger to society (Cal. Rules of Court, rule 4.421(b)(1)). Although a single aggravating circumstance supports imposition of the upper term, the court did not provide its rationale on the record. We reverse the sentences on counts 7 and 8 and remand the matter for the court to exercise its discretion pursuant to sections 1170 and 654.

*III. Fines*

Garcia argues the trial court erred by imposing three fines. The Attorney General agrees the court erred by imposing the section 667.6, subdivision (f), victim-witness assistance fund fine but the agreement ends there. We discuss each fine anon.

"A sentence is said to be unauthorized if it cannot 'lawfully be imposed under any circumstance in the particular case' [citation], and therefore is reviewable 'regardless of whether an objection or argument was raised in the trial and/or reviewing court.' [Citations.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 887.) "[A]n unauthorized sentence is subject to correction" when it ultimately comes to the attention of a reviewing court. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1044-1045.)

Section 667.6 imposes sentence enhancements and allows a trial court to impose fines upon a defendant convicted of sex offenses who has prior sex offense convictions. (§ 667.6, subds. (a), (f).) As the Attorney General concedes, and the record establishes, Garcia does not have a qualifying prior conviction. Thus, we order the $1,500 fine imposed under section 667.6, subdivision (f), stricken.

Garcia relies on the italicized language below to assert the trial court erred by imposing the two fines because the court did not punish him pursuant to these sections. The court punished him pursuant to section 667.61's one strike law.

Section 264, subdivision (b), provides in relevant part as follows: "In addition to any *punishment imposed under this section* the judge may assess a fine not to exceed seventy dollars ($70) against a person who violates Section 261 or former Section 262 with the proceeds of this fine to be used in accordance with Section 1463.23." (Italics added.)

Section 286, subdivision (m), provides in relevant part as follows: "In addition to any *punishment imposed under this section*, the judge may assess a fine not to exceed seventy dollars ($70) against any person who violates this section, with the proceeds of this fine to be used in accordance with Section 1463.23." (Italics added.)

The Attorney General responds a plain reading of these sections does not require a trial court to punish a defendant pursuant to these sections. He states these sections simply allow for both a prison term and a fine.

We agree with Garcia the trial court erred by imposing these fines, but for a different reason. Both statutes provide "the proceeds of this fine to be used in accordance with Section 1463.23." Section 1463.23 was repealed effective January 1, 2018. (Stats. 2017, ch. 537, § 18.) The AIDS education fines imposed under section 264, subdivision (b), and section 286, subdivision (m), can no longer be imposed because the proceeds cannot be "used in accordance with Section 1463.23" of the Penal Code, as these sections require. In other words, the repeal of section 1463.23 implicitly repealed section 264, subdivision (b), and section 286, subdivision (m). Thus, we order the $70 fines imposed under section 264, subdivision (b), and section 286, subdivision (m), stricken.

13

## DISPOSITION

We reverse the sentences on counts 7 and 8 and remand for resentencing. We order the following fines stricken: $1,500 (§ 667.6, subd. (f)); $70 (§ 264, subd. (b)), and $70 (§ 286, subd. (m)). In all other respects, the judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


SANCHEZ, J.


MOTOIKE, J.